2017 PA Super 140

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KASHAMARA GREEN | |
| Appellant | No. 1324 WDA 2014 |

Appeal from the Judgment of Sentence March 18, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0001078-2012

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., BENDER, P.J.E.,
BOWES, J., PANELLA, J., SHOGAN, J., LAZARUS, J., OLSON, J.,
and OTT, J.

OPINION BY GANTMAN, P.J.:                    **FILED MAY 09, 2017**

Appellant, Kashamara Green, appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas, following his jury trial conviction for one (1) count of theft by failure to make required disposition of funds received.[1] We affirm.

The relevant facts and procedural history of this case are as follows. In 2011, Appellant worked as the manager of a Family Dollar store located in Penn Hills, Pennsylvania. One of Appellant's responsibilities was to make regular deposits of cash generated by the store's business. The normal procedure was for the store manager, Appellant in this case, to bring the

---

[1] 18 Pa.C.S.A. § 3927(a).

cash to the bank in a bag, make the deposit, and return to the store to fill out a deposit log. A different employee had to verify the cash deposit. Generally, Appellant obtained a verifying signature from the assistant manager by showing her either a validated deposit slip from the bank or an empty cash bag. Nobody had to accompany Appellant to the bank when he made the deposits.

The testimony at trial revealed the following. In September 2011, Shaun McDonald, a regional Loss Prevention Director for Family Dollar, received notice of a missing deposit from the Family Dollar store in Penn Hills. Upon investigation, Mr. McDonald discovered four missing deposits from that store. After reviewing the store deposit logs, Mr. McDonald established that Appellant was the person who was responsible for the four missing cash deposits: proceeds for July 10, 2011 ($2,900.83), August 7, 2011 ($2,943.31), August 19, 2011 ($2,302.13), and September 1, 2011 ($3,302.56). Mr. McDonald interviewed Appellant, who confirmed he was responsible for making the four deposits in question, had signed for the deposits, and had taken each of them to the bank as noted in the store deposit log. The Family Dollar store deposit log, however, registered $2,900.83 in-store proceeds for July 10, 2011, and dropped at the bank on July 12, 2011. Appellant also gave Mr. McDonald a deposit slip for $2,900.83 that purported to be for the business day of July 10, 2011. The proffered deposit slip noted a deposit date of July 14, 2011. Mr. McDonald

confirmed the deposit slip from Appellant had been altered, as the sequence number (#70) and other information on the slip corresponded to a different deposit made the month before, on June 7, 2011. Mr. McDonald said he was able to verify that the four deposits in question were not ever made as documented. Mr. McDonald also stated he had personally seen the one "altered" deposit slip from Appellant. As a result of his investigation, Mr. McDonald contacted the police, who then contacted the bank.

On cross-examination, Mr. McDonald confirmed the deposits in this case were logged as having been deposited at an outside drop box at the bank. He said Appellant was cooperative, answered all questions, denied keeping those deposits for personal gain, and agreed to assist with any police investigation. Mr. McDonald also confirmed both the log and the bank receipts should have been under lock and key but occasionally bank deposit slips would "go missing." Likewise, at times the person physically making the deposit might not get a bank deposit receipt on the same day. Defense counsel objected to the admission of the "altered" deposit slip and logs because they were copies of the originals; counsel did not object to Mr. McDonald's testimony regarding the information contained in the documents where Mr. McDonald had personal knowledge of the originals. (**See** N.T. Trial, 3/17/14, at 24-62.)

Ms. Colleen Doheny, an Internal Fraud Investigator for PNC Bank, also investigated the matter. Ms. Doheny reviewed the deposit slip Appellant had

given to Mr. McDonald, but she could not find that deposit in the bank's teller journals. She also recognized that the information on the slip did not line up evenly, and the font was inconsistent with the bank's practice of using all capital letters to identify the month in the date field. Ms. Doheny suspected the deposit slip had been modified. Moreover, PNC Bank reported that teller cash box #5 referenced on the slip was not in operation on July 14, 2011, the date on the deposit slip. Additionally, the dollar amount and sequence number on the slip did not match any other cash box in operation on that date. The cash box and sequence numbers, however, matched the information for a deposit made the previous month on June 7, 2011. (*Id.* at 64-69).

Ms. Doheny also reviewed the bank's surveillance videos, looking for a person or a vehicle that matched the verbal descriptions, obtained from the police, of Appellant and his car, a 1996 light blue Buick Riviera. Defense counsel objected to her testimony about the tapes on the ground that the tapes were not produced at trial, in violation of the best evidence rule at Pa.R.E. 1002. (*Id.* at 70-72). The Commonwealth explained it did not have the videos because "they are no longer available." (*Id.* at 70).[2] The court

---

[2] The Commonwealth states in its brief that the videos were unavailable at trial because the bank's surveillance system periodically recycles old tape. The Commonwealth, however, did not share this information with the trial court or make any showing of a diligent search to locate the original videotapes, which were not lost or destroyed through the fault of the
*(Footnote Continued Next Page)*

allowed Ms. Doheny's limited testimony that she had seen no one, on the tapes she viewed, who matched Appellant's description or any vehicle that matched Appellant's car. (*Id.* at 72-73). Ms. Doheny admitted on cross-examination that she had not met Appellant and had only a verbal description of him from the police. She also conceded the possibility of errors on the bank's end of a deposit generally, for example, deposits made to the wrong account or a night-box jam. Ms. Doheny reconfirmed that teller cash box #5, referenced on the "altered" slip, was not in operation on July 14, 2011, so there was no sequence #70 at teller cash box #5 for that day. (*Id.* at 73-79).

Detective Joseph Blaze conducted the police investigation in this case. He identified Appellant as the person the detective had interviewed regarding the missing deposits. Together, Detective Blaze and Appellant reviewed the store deposit log, and Appellant acknowledged he was the person responsible for the deposits at issue. Appellant gave Detective Blaze no explanation for why the money was missing, but Appellant did confirm the dates and times associated with each deposit in the log were correct. Detective Blaze also said he provided Ms. Doheny with Appellant's description, along with the dates and times stated in the log as Appellant had verified. On cross-examination, Detective Blaze agreed Appellant

*(Footnote Continued)* ─────────────────

proponent. Thus, we give this supplemental information no further consideration.

denied taking any of the money. Detective Blaze also said his investigation was primarily based on the deposit log and Appellant's admission that he was responsible for the deposits at issue. Detective Blaze asked Ms. Doheny to investigate the deposits and review the surveillance tapes associated with the particular deposits. No one actually witnessed Appellant tampering with the deposit slip or taking the money, but Appellant openly admitted he carried the money from the store to the bank on the dates and times recorded. No one actually knew if Appellant did **not** make the deposits, but there was no evidence of the deposits or of him making the deposits either. (*Id.* at 80-91). At the close of the Commonwealth's case-in-chief, defense counsel moved for judgment of acquittal on the forgery count, because the original deposit slip was not produced. The court granted the motion on that count.

Next, Appellant testified he had worked for the Family Dollar store for three years, during which he was promoted from a clerk position to assistant manager and then to store manager. Appellant was the store manager in September 2011. Appellant's duties as assistant manager and as manager included taking cash deposits to the bank at least several times each week. On the dates of the deposits at issue, the deposit log demonstrated someone other than Appellant had verified the deposits in the log. Specifically, on those dates Appellant either showed his assistant an empty bag or the bank receipt. Appellant said he was shocked over the missing deposits. Appellant

had no idea where the money went, but he assured the jury he did not keep the money for "his personal gain." Appellant also stated he did not ever change or alter any deposit receipts. On cross-examination, Appellant confirmed no one ever went with him to make the bank deposits, he always followed the store rules with respect to the deposits, but occasionally he signed the log by mistake (in the wrong column) as the person who verified a deposit. The transactions in question were all night drops, with no hand-to-hand contacts with bank tellers during regular business hours. Appellant claimed the deposit slip he gave to Mr. McDonald was exactly how the bank had printed it and given it to Appellant. (*Id.* at 93-105). Following Appellant's testimony, the defense rested. The court then colloquied Appellant to confirm his choice to testify at trial, without presenting character evidence, was freely and voluntarily made.

The Commonwealth's remaining charges against Appellant included the four counts of theft by failure to make required disposition of funds received. The jury convicted Appellant of only one count of theft, related to the missing deposit of $2,900.83 for July 2011. The jury found Appellant not guilty on the remaining theft counts.

The court sentenced Appellant on March 18, 2014, to three (3) years' probation and ordered restitution in the amount of $2,900.83. On March 28, 2014, Appellant timely filed a post-sentence motion for a new trial, challenging the weight of the evidence. Following a hearing, the court

denied post-sentence relief by order entered July 14, 2014. Appellant timely filed a notice of appeal on August 13, 2014. The court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied.

In a memorandum decision filed on December 22, 2015, a panel of this Court (with one dissent) reversed Appellant's judgment of sentence and remanded for a new trial. The panel majority agreed with Appellant that Ms. Doheny's testimony on the bank surveillance videos violated the best evidence rule. The panel addressed only this claim and, without further analysis, simply concurred with the trial court's opinion that it had erred in admitting that testimony at trial, the error was not harmless, and it constituted *per se* reversible error. The trial court arrived at its conclusion, citing **Commonwealth v. Lewis**, 623 A.2d 355, 358 (Pa.Super. 1993) as dispositive. Due to this Court's treatment of Appellant's first issue, the panel majority declined to address his second issue challenging the sufficiency of the evidence.

The dissent took the position that Ms. Doheny's testimony on the surveillance tapes arguably violated the best evidence rule in theory, but admission of that limited testimony was harmless error, given its limited substance compared to the other properly-admitted evidence of Appellant's guilt. The dissent distinguished the **Lewis** case on several grounds, including: (1) **Lewis** did **not** hold that any violation of the best evidence rule

is reversible error *per se*; (2) the objectionable testimony in **Lewis** concerned Mr. Lewis' actions on the videos along with the arresting officer's interpretation of those actions, which raised the unfair inference that Mr. Lewis knew his companion intended to remove merchandise from a store without paying for it; (3) the arresting officer obtained his knowledge of Mr. Lewis' actions solely from watching the videos; and (4) the properly admitted testimony of the security guard was not independently cumulative of the inferences raised in the objectionable testimony. The **Lewis** Court also noted that the explanation given for the unavailability of the videos was unsatisfactory. Therefore, the dissent concluded **Lewis** was distinguishable from the present case and not dispositive. The dissent also addressed Appellant's second issue challenging the sufficiency of the evidence as this Court did in **Lewis**, even though Mr. Lewis obtained relief on appeal in the form of a new trial. On March 1, 2016, this Court granted the Commonwealth's application for *en banc* reargument and withdrew the original memorandum decisions.

Appellant raises the following issues for *en banc* review:

> DID THE TRIAL COURT ERR WHEN IT PERMITTED TESTIMONY FROM A BANK ADMINISTRATOR REGARDING WHAT SHE OBSERVED IN A SURVEILLANCE VIDEO, WHEN THE VIDEO ITSELF WAS NOT ADMITTED INTO EVIDENCE, IN VIOLATION OF THE BEST EVIDENCE RULE?
>
> WAS THE EVIDENCE SUFFICIENT TO SUPPORT THE GUILTY VERDICT IN THIS CASE WHERE THERE WAS NO PROOF OF ANY CRIMINAL INTENT OR THAT [APPELLANT] BENEFITED FROM THE MISSING FUNDS, RENDERING ANY GUILTY

VERDICT THE PRODUCT OF CONJECTURE AND SURMISE?

(Appellant's *en banc* brief at 7).

In his first issue, Appellant argues Ms. Doheny had no first-hand knowledge of what was depicted on the bank surveillance videos. Specifically, Appellant contends Ms. Doheny's knowledge of the surveillance videos was based solely on viewing the videos after the fact, without contemporaneous observations of what was also captured on the videos. Appellant avers Ms. Doheny reviewed the surveillance videos based on an estimation of when the deposits might have been made, but she did not review the videos for the entire nights in question; and she also viewed the videos with a mere verbal description of Appellant and his car. Appellant asserts Ms. Doheny's testimony relating her observations of the bank surveillance videos violated the best evidence rule because the Commonwealth failed to introduce at trial the actual videos Ms. Doheny had viewed. Appellant avers the jury convicted him of the theft count linked to Ms. Doheny's testimony regarding the surveillance videos. Appellant claims admission of Ms. Doheny's testimony on the surveillance videos was not harmless error because there was a reasonable possibility her testimony contributed to the guilty verdict. Appellant concludes he is entitled to a new trial. We disagree.

This Court has held:

> "Admission of evidence is within the sound discretion of
> the trial court and will be reversed only upon a showing

that the trial court clearly abused its discretion." ***Commonwealth v. Drumheller***, 570 Pa. 117, 135, 808 A.2d 893, 904 (2002), *cert. denied*, 539 U.S. 919, 123 S.Ct. 2284, 156 L.Ed.2d 137 (2003) (quoting ***Commonwealth v. Stallworth***, 566 Pa. 349, 363, 781 A.2d 110, 117 (2001)). "Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." ***Drumheller, supra*** (quoting ***Stallworth, supra*** at 363, 781 A.2d at 117–18).

***Commonwealth v. Reese***, 31 A.3d 708, 716 (Pa.Super. 2011) (*en banc*).

The best evidence rule provides:

Rule 1002. Requirement of the Original

An original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise.

> *Comment:* Pa.R.E. 1002 differs from F.R.E. 1002 to eliminate the reference to Federal law.

> This rule corresponds to the common law "best evidence rule." ***See Hera v. McCormick***, 425 Pa.Super. 432, 625 A.2d 682 (1993). The rationale for the rule was not expressed in Pennsylvania cases, but commentators have mentioned four reasons justifying the rule.

> > (1) The exact words of many documents, especially operative or dispositive documents, such as deeds, wills or contracts, are so important in determining a party's rights accruing under those documents.

> > (2) Secondary evidence of the contents of documents, whether copies or testimony, is susceptible to inaccuracy.

> > (3) The rule inhibits fraud because it allows the parties to examine the original documents to detect

alterations and erroneous testimony about the contents of the document.

(4) The appearance of the original may furnish information as to its authenticity.

5 Weinstein & Berger, *Weinstein's Evidence* § 1002(2) (Sandra D. Katz rev. 1994).

The common law formulation of the rule provided that the rule was applicable when the terms of the document were "material." The materiality requirement has not been eliminated, but is now dealt with in Pa.R.E. 1004(d). That rule provides that the original is not required when the writing, recording or photograph is not closely related to a controlling issue.

The case law has not been entirely clear as to when a party is trying "to prove the content of a writing, recording, or photograph." However, writings that are viewed as operative or dispositive have usually been considered to be subject to the operation of the rule. On the other hand, writings are not usually treated as subject to the rule if they are only evidence of the transaction, thing or event. ***See Hamill-Quinlan, Inc. v. Fisher***, 404 Pa.Super. 482, 591 A.2d 309 (1991); ***Noble C. Quandel Co. v. Slough Flooring, Inc.***, 384 Pa.Super. 236, 558 A.2d 99 (1989). Thus, testimony as to a person's age may be offered; it is not necessary to produce a birth certificate. ***See Commonwealth ex rel. Park v. Joyce***, 316 Pa. 434, 175 A. 422 (1934). Or, a party's earnings may be proven by testimony; it is not necessary to offer business records. ***See Noble C. Quandel Co., supra***.

Traditionally, the best evidence rule applied only to writings, but Pa.R.E. 1002 may be applicable to recordings or photographs. However, recordings and photographs are usually only evidence of the transaction, thing or event. It is rare that a recording or photograph would be operative or dispositive, but in cases involving matters such as infringement of copyright, defamation, pornography and invasion of privacy, the requirement for the production of the original should be applicable.

> There is support for this approach in Pennsylvania law. *See Commonwealth v. Lewis*, 424 Pa.Super. 531, 623 A.2d 355 (1993) (video tape); *Anderson v. Commonwealth*, 121 Pa.Cmwlth. 521, 550 A.2d 1049 (1988) (film).

Pa.R.E. 1002 and *Comment*. "The rationale for the rule is readily apparent: in light of the added importance that the fact-finder may attach to the written word, it is better to have available the exact words of a writing, to prevent the mistransmitting [of] critical facts which accompanies the use of written copies or recollection, and to prevent fraud." *Lewis, supra* at 358. Surveillance videotapes "present the same type of circumstances which the best evidence rule was designed to guard against," namely testimony about the content of a videotape when the original tape has not been produced or admitted. *Id.*

Rule 1004 of the Pennsylvania Rules of Evidence further provides:

> **Rule 1004.  Admissibility of Other Evidence of Content**
>
> An original is not required and other evidence of the content of a writing, recording, or photograph is admissible if:
>
> (a)  all the originals are lost or destroyed, and not by the proponent acting in bad faith;
>
> (b)  an original cannot be obtained by any available judicial process;
>
> (c)  the party against whom the original would be offered had control of the original; was at that time put on notice, by pleadings or otherwise, that the original would be a subject of proof at the trial or hearing; and fails to produce it at the trial or hearing; or

> (d) the writing, recording, or photograph is not closely related to a controlling issue.

Pa.R.E. 1004. Thus, Rule 1002 is subject to the exceptions found in Rule 1004. ***Commonwealth v. Loughnane***, 128 A.3d 806, 813 (Pa.Super. 2015). Where the best evidence rule is at issue, and an original cannot be produced, the proponent must show that a diligent search was conducted to locate the original and the original was lost or destroyed through no fault of the proponent. ***Id.*** Upon a satisfactory showing in this regard, the production of the original will be excused and secondary evidence is admissible. ***Id.***

"Nevertheless Rule 1002 is applicable only in circumstances where the contents of the writing, recording or photograph are integral to proving the central issue in a trial. ... Consequently, if the Commonwealth is introducing a writing, recording, or photograph at trial, Rule 1002 requires that the original be introduced only if the Commonwealth must prove the contents of the writing, recording or photograph to establish the elements of its case." ***Commonwealth v. Fisher***, 764 A.2d 82, 88 (Pa.Super. 2000) (citing ***Commonwealth v. Townsend***, 747 A.2d 376, 380 (Pa.Super. 2000), *appeal denied*, 563 Pa. 661, 759 A.2d 385 (2000) (stating: "The best evidence rule is controlling only if the terms of [the proposed evidence] must be proved to make a case or provide a defense")). "The rule is not implicated just because evidence is relevant;" the rule applies if the writing,

recording, or photograph is necessary to prove the elements of a case. *Id.* at 381. In other words, the content of the video must be material to, and not just mere evidence of, the issues at bar for the best evidence rule to apply. *Lewis, supra* at 358. "If the Commonwealth does not need to prove the content of the writing or recording to prove the elements of the offense charged, then the Commonwealth is not required to introduce the original writing or recording." *Commonwealth v. Dent*, 837 A.2d 571, 590 (Pa.Super. 2003). *See also Fisher, supra* (holding no violation of best evidence rule occurred with admission of duplicate tape recordings of defendant's taunting voice mail messages, where tapes did not establish fundamental components of any offenses charged); *Townsend, supra* (holding no violation of best evidence rule occurred where trial court allowed detective to testify regarding content of defendant's written confession, even though written confession was not admitted into evidence; content of confession made persuasive evidence for Commonwealth's case but was not necessary to establish elements of crimes of burglary and assault, which had no elements requiring proof of content of confession or any other writing). The Comment to Rule 1002 suggests "recordings and photographs are usually only evidence of the transaction, thing or event. It is rare that a recording or photograph would be operative or dispositive...." Pa.R.E. 1002 *Comment*.

Neither case law nor the rules of evidence are entirely clear on the

distinction between "material to," "operative," "dispositive," and "proof of" the transaction, thing, or event, as opposed to "mere evidence of" or "compelling evidence" of the transaction, thing, or event. ***See, e.g., Hera v. McCormick***, 625 A.2d 682 (Pa.Super. 1993) (stating application of best evidence rule is limited to those situations where content of item is at issue and must be proved to make case or provide defense); ***Hamill-Quinlan, supra*** (suggesting secondary evidence is admissible if relevant but not if it is dispositive of issues).

Case law, however, does unequivocally demonstrate that a violation of the best evidence rule is subject to the harmless error test and does not automatically rise to the level of reversible error *per se* in every case where the rule is truly violated. ***See Lewis, supra***. "Not all errors at trial, however, entitle an appellant to a new trial, and [t]he harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial...." ***Reese, supra*** at 719 (quoting ***Commonwealth v. West***, 834 A.2d 625, 634 (Pa.Super. 2003), *appeal denied*, 586 Pa. 712, 889 A.2d 1216 (2005)). Harmless error is "a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt." ***Commonwealth v. Koch***, 39 A.3d 996, 1006 (Pa.Super. 2011). "An error will be deemed harmless where the appellate court concludes beyond a reasonable doubt that the error could

not have contributed to the verdict." ***Commonwealth v. Mitchell***, 576 Pa. 258, 280, 839 A.2d 202, 214 (2003).

The Commonwealth bears the burden to establish that the error was harmless. ***Id.*** at 280, 839 A.2d at 215. The Commonwealth satisfies the harmless error burden when the Commonwealth is able to show:

> (1) the error did not prejudice the defendant or the prejudice was *de minimis*; **or** (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; **or** (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Passmore***, 857 A.2d 697, 711 (Pa.Super. 2004), *appeal denied*, 582 Pa. 673, 868 A.2d 1199 (2005) (internal citation omitted) (emphasis added). The harmless error test is expressed in the disjunctive. ***See id.***

Theft by failure to make required disposition of funds received is defined as follows:

> **§ 3927. Theft by failure to make required disposition of funds received**
>
> **(a) Offense defined.**—A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition. The foregoing applies notwithstanding that it may be impossible to identify particular property as

> belonging to the victim at the time of the failure of the actor to make the required payment or disposition.

18 Pa.C.S.A. § 3927(a).

Instantly, the Commonwealth originally charged Appellant with one count of forgery and four counts of theft by failure to make required disposition of funds received, related to four missing bank deposits for the Family Dollar store located in Penn Hills, Pennsylvania. At the end of the Commonwealth's case-in-chief, the court granted the defense motion for acquittal on the forgery charge. Ultimately, the jury convicted Appellant only of the one theft count corresponding to the missing deposit associated with the altered deposit slip Appellant had offered to the investigation. The court sentenced Appellant to three years' probation and ordered restitution in the amount of $2,900.83, which was the specific amount associated with the single theft conviction for the missing deposit of July 2011.

At Appellant's jury trial, Ms. Doheny briefly testified regarding her review of PNC bank surveillance videos. Before her testimony about the videos, defense counsel objected citing the best evidence rule, because Ms. Doheny had viewed the videos after the events at issue, she had no personal knowledge of the events, and the original videos were not offered into evidence. The court overruled the objection, declined to preclude this particular testimony, and invited defense counsel to cross-examine the witness vigorously. Ms. Doheny testified as follows:

> PROSECUTOR:     Ma'am, were you able to view any

surveillance video from PNC?

MS. DOHENY:     Yes.

PROSECUTOR:     Were you given a description of [Appellant]?

MS. DOHENY:     Yes. They would call me. I would ask them [for a] general description, and also I always ask for type of vehicle just in case I see them going in and out of the lot.

PROSECUTOR:     Were you asked to view the video for certain days?

MS. DOHENY:     Yes. I don't recall the days, but they do ask me in any investigation to view video. I would review it for half an hour before the time and half an hour after the time, so I'll look for an hour. If somebody says they are at the bank at 12:00, I'll look at 11:30 to 12:30, giving some leeway there.

PROSECUTOR:     Where do those cameras point to? What is the angle on those cameras?

MS. DOHENY:     There [are] angles everywhere. They are on the teller line. They are on the night depository outside. They are on the ATM outside. They are on the ATM inside, night depository inside also.

PROSECUTOR:     At any point while you were viewing those videos, did you see someone matching the description of [Appellant] on those videos?

MS. DOHENY:     No, not during the time frame that they gave me to look at.

PROSECUTOR:     What about his vehicle?

MS. DOHENY:     No, not during the time frame.

(N.T. Trial, 3/17-18/14, at 72-73.)   On cross examination, Ms. Doheny testified as follows:

- 19 -

DEFENSE COUNSEL: Good afternoon, ma'am. I'll ask you some questions as well. The video you're speaking of, the time frame you were given, that was provided to you by the police; is that correct?

MS. DOHENY:      Yes.

DEFENSE COUNSEL: So that was not a time frame that was provided to you by [Appellant], correct?

MS. DOHENY:      Correct.

DEFENSE COUNSEL: You've never met—at the time that you were viewing these videos, you had never met [Appellant], correct?

MS. DOHENY:      Correct.

DEFENSE COUNSEL: And so your only physical description of him was a photo that you looked at; is that correct?

MS. DOHENY:      No. I don't ask for a photo. I ask for a description, and then I look at the area where they are making the deposit and then the date and the time.

DEFENSE COUNSEL: So you didn't even look at a photo of [Appellant]. You just had a verbal description of what he looked like?

MS. DOHENY:      Yes.

(*See id.* at 73-74.)  On redirect examination, the Commonwealth inquired:

PROSECUTOR:      If you noticed anybody—while you were viewing the video, if you noticed anybody closely matching the description that you were given, would you have told the police?

MS. DOHENY:      I would have told them, and I would have printed a photo.

(*See id.* at 78-79.)  This narration represents the entirety of Ms. Doheny's

testimony on the surveillance videos, which was based wholly on her viewing

the videos at a time and date after the recordings had been made. Her testimony was not based on any contemporaneous personal observations or personal knowledge of what was depicted on the videos. Likewise, Ms. Doheny did not identify the exact dates and times of the surveillance videos she had viewed. To the extent she spoke generally about how and what she does to conduct an investigation like this one, her testimony was proper and cannot be deemed violative of the best evidence rule.

No one disputes that Appellant had to be physically at the bank to make deposits. Under **Fisher, supra** and **Townsend, supra**, however, the "best evidence rule" analysis requires us to ascertain whether the Commonwealth had to prove the factual content of the videos to establish the elements of the theft offense(s). When Ms. Doheny spoke about watching surveillance videos to look for Appellant and/or his vehicle, that testimony was related to the crimes charged.

Here, the Commonwealth had to prove Appellant was responsible for but did not make the cash deposits. Appellant's nonappearance at the bank at various unclear times was relevant to the Commonwealth's case. **See** 18 Pa.C.S.A. § 3927(a). If Ms. Doheny did not see Appellant on the tapes she viewed, then her testimony established only that no one matching a verbal description of Appellant and no vehicle matching a verbal description of his vehicle appeared at the bank at those limited, unidentified dates and times. Thus, Ms. Doheny's testimony on the factual content of the videos she saw

was related to the case, but it was arguably mere evidence of Appellant's complete failure to make the required disposition of the funds in his possession at any time.

We conscientiously defer to the best evidence rule when the case requires proof of the factual content of a writing, document, photograph, or videotape of someone's actions to prove a culpable deed, or to show the nonexistence of a guilty act. The present case, however, involved testimony about videotapes where Appellant did not appear at all. So the best evidence rule seems more attenuated and arguably did not require production of the original surveillance tapes Ms. Doheny referred to in her testimony. *See Fisher, supra*; *Townsend, supra*.

To prove Appellant did not make the deposits, the Commonwealth introduced other evidence, including an altered deposit slip and the lack of bank records for any of the four deposits in question. At trial, Ms. Doheny also testified she conducted a search of the records and teller electronic journals from the PNC branch at Penn Hills for any deposits made to the Family Dollar account on July 14, 2011, in the amount of $2,900.83. Ms. Doheny testified the bank had no record of a deposit in that amount on the date of the deposit slip Appellant produced. Moreover, Ms. Doheny testified the deposit slip did not appear to be genuine; not only did the deposit slip appear to be doctored from an earlier confirmed deposit slip, but also the deposit slip indicated it was associated with a cash box that was not in

operation on July 14, 2011. This additional evidence further signified Appellant had not made a deposit of $2,900.83 on July 14, 2011, as his deposit slip indicated. (*See* N.T. Trial at 64-69.)

The properly admitted evidence at trial demonstrated: (1) Appellant was the sole person responsible for depositing $2,900.83 into the Family Dollar corporate PNC account; (2) a specific cash deposit was not placed in the account or received by PNC Bank on the date of the deposit slip; (3) an internal investigation revealed the missing $2,900.83 deposit was not a mistake on the part of the bank or its employees, and the amount in question had not been received or deposited into any other PNC account; and (4) after learning of the investigation, Appellant offered a deposit slip for the amount of $2,900.83, which had been altered. In reviewing previous deposits from Family Dollar, Ms. Doheny was able to determine that a deposit had been made with the same sequence number and in the same cash box during June 2011, one month earlier, but not on July 14, 2011. Ms. Doheny reconfirmed that teller cash box #5, referenced on the "altered" slip, was not in operation on July 14, 2011, so there was no sequence #70 at teller cash box #5 for that day.

The jury's verdict makes clear the admission of the challenged testimony did not control the verdict. Plainly, the jury was able to sort out the relevant evidence, acquit Appellant of three theft offenses, and convict him solely of the theft related to the modified deposit slip. Given this

verdict, we hold that any prejudicial effect associated with Ms. Doheny's limited testimony was *de minimis* by comparison to the properly admitted and uncontradicted evidence of Appellant's guilt. **See Passmore, supra**. Therefore, even if the admission of Ms. Doheny's limited testimony regarding the surveillance videos was error, it was harmless error. **See Mitchell, supra**. Accordingly, we reject Appellant's contention that his conviction on the one count of theft was tied directly to Ms. Doheny's testimony about what she did not see on the bank surveillance tapes, suggesting her video testimony was essential to the jury's verdict. Nowhere did Ms. Doheny state she only reviewed the video from July 14, 2011. In fact, Ms. Doheny did not mention any specific dates in her testimony. Her testimony simply indicated she had reviewed surveillance footage from multiple days. (**See** N.T. Trial at 72-73.) We similarly decline the trial court's invitation to remand the case for a new trial on this basis.

Nonetheless, we can extract two principles from reading the best evidence rule in harmony with prevailing case law: (1) whether the best evidence rule applies to bar admission of evidence depends on the facts and circumstances of the particular case; and (2) nothing in Pennsylvania law renders a violation of the best evidence rule as *per se* reversible error. Thus, Appellant's first issue merits no relief.

In his second issue, Appellant argues he made the deposits and the deposits were verified by an assistant manager at the store. Appellant

asserts a district manager also reviewed and signed the deposit log. Appellant contends he accepted ultimate responsibility for ensuring the cash proceeds were properly deposited but consistently denied that he kept any of the money for himself. Appellant emphasizes his willingness to work with authorities to discover what happened to the deposits. Appellant avers Mr. McDonald testified that deposit slips sometimes went missing from the store because they were kept in an unlocked filing cabinet accessible to many people. Appellant also accentuates how the Commonwealth failed to produce any evidence that Appellant had used the money for personal expenditures or otherwise intentionally dealt with the money as his own. Appellant asserts Detective Blaze did not search Appellant's home, car, or personal bank account, or try to discover if Appellant had kept the missing money for himself. Appellant submits the Commonwealth introduced no evidence of the location of the money in question. Appellant maintains he loved his job at Family Dollar, where he had worked for three years without incident, and no evidence suggested he had a motive to steal money from the store. Appellant concludes the evidence was insufficient to convict him of theft by failure to make required disposition of funds. We disagree.

Review of a challenge to the sufficiency of the evidence implicates these principles:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted…in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every

element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005)). Theft by failure to make required disposition of funds received has four elements:

1) the obtaining of the property of another; 2) subject to an agreement or known legal obligation upon the receipt to make specified payments or other disposition thereof; 3) intentional dealing with the property obtained as the defendant's own; and 4) failure of the defendant to make the required disposition of the property.

*Commonwealth v. Morrissey*, 540 Pa. 1, 8, 654 A.2d 1049, 1052 (1995); 18 Pa.C.S.A. § 3927.

Instantly, in addition to Ms. Doheny's testimony regarding the bank records and evidence of the deceptive deposit slip, the Commonwealth introduced the testimony of Mr. McDonald, the Loss Prevention Director at

Family Dollar at the time of Appellant's employment. Mr. McDonald testified at trial: (1) he was asked to conduct an investigation for the Penn Hills Family Dollar in September 2011, regarding missing deposits; (2) he reviewed the store's deposit logs and saw Appellant's signature was located next to a deposit of $2,900.83 that Appellant claimed he made at PNC Bank in July 2011; Mr. McDonald further verified with the Family Dollar corporate office that this deposit was not received; he then interviewed Appellant, who admitted he was responsible for the July 2011 deposit and signed off on it in the logbook after he purportedly made the deposit at the bank; Appellant also gave Mr. McDonald a written statement documenting what Appellant had told Mr. McDonald; (3) Mr. McDonald examined the deposit slip Appellant offered, from July 14, 2011, and determined it was an altered, previous deposit slip because the sequence number and other information on it actually corresponded to a deposit made the previous month, on June 7, 2011; (4) Mr. McDonald verified that the store managers were not permitted to keep the nightly deposits. (**See** N.T. Trial at 24-62.)

The Commonwealth also presented the testimony of Detective Joseph Blaze from the Penn Hills Police Department who conducted an outside investigation in 2011. Detective Blaze said he interviewed Appellant regarding the missing deposits, and Appellant explained that he took the $2,900.83 to PNC and deposited it. Detective Blaze stated Appellant could not account for the missing money. (**Id.** at 81-84). Viewed in the light

most favorable to the Commonwealth as verdict winner, the evidence was sufficient to prove Appellant had the Family Dollar funds for deposit, he was responsible to make the deposit, he failed to make the required deposit, and produced fabricated evidence. The Commonwealth did not have to prove what Appellant actually did with the money. Thus, the evidence was sufficient to sustain the verdict. *See Morrissey, supra*; *Hansley, supra*; 18 Pa.C.S.A. § 3927(a). Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/9/2017