J-A09006-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JONTEE D. RUSSELL :
:
Appellant : No. 935 WDA 2017

Appeal from the Judgment of Sentence February 11, 2017
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0002246-2014

BEFORE:  BOWES, J., DUBOW, J., and MURRAY, J.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 18, 2018**

Jontee D. Russell appeals from the aggregate judgment of sentence of eight to sixteen years imprisonment imposed after a jury convicted him of various crimes related to a home invasion robbery.  We affirm.

In November 2013, Appellant informed Jamar Atkinson, his cousin, that he had "a lick to hit," meaning a robbery or burglary.  N.T., 5/4-7/15, at 174-75.  Atkinson discussed the "opportunity" with his friend from work, Derrell Mack, who did not know Appellant.  *Id*. at 175-76.  On November 14, 2013, Atkinson called Mack to enlist him to pick up Atkinson and drive from Pittsburgh, where they both lived, to Appellant's residence in Donora.  *Id*. After Mack and Atkinson collected Appellant in a green SUV, Appellant directed Mack to nearby Monessen, to a house Appellant claimed contained drugs and money.  *Id*. at 179-80.  The trio waited outside the house until it appeared to be empty.  *Id*. at 180-81.  Mack, Atkinson, and Appellant, who was armed,

entered the house through the kitchen door after breaking a window. *Id*. at 182-83. Two of the intruders proceeded upstairs and found Rebecca Thompson asleep in her bed.

Ms. Thompson was awakened by a hand placed over her mouth and a gun pointed at her head. *Id*. at 78. The men asked her where the money and drugs were, but she indicated that there was nothing there. *Id*. at 79-83. They took her around the house, at gunpoint, demanding to know where the contraband was located, and ransacking the place looking for it. *Id*. at 81-84. Ultimately, the men left, taking an Xbox game console, a child's laptop, a bank card, a cell phone, a pack of cigarettes, and $40 in cash. *Id*. at 88. Ms. Thompson called 911 and reported that the men left in a green Tahoe. *Id*. at 89-90.

A BOLO for three African-American men in a green SUV was issued, and police shortly thereafter spotted the vehicle and pursued it. *Id*. at 121-24. Appellant and Atkinson eluded apprehension by fleeing on foot, but the officer took the driver, Mack, into custody. *Id*. at 124-27, 286. Mack admitted his role in the burglary, identified Atkinson by name, and indicated the third man was Atkinson's cousin. *Id*. at 287-89. Items taken from Ms. Thompson's home, as well as Atkinson's fingerprints, were found in the SUV. *Id*. at 353, 356-58. Atkinson later was interviewed, admitted his participation, and identified Appellant as the third participant. *Id*. at 193-94. A blood sample

recovered from Ms. Thompson's living room was tested and matched Appellant's DNA. *Id*. at 407.

In addition to the above evidence, at trial the court admitted over Appellant's objection certain mobile phone records associated with Appellant and Atkinson. Appellant offered witnesses in his defense, including Cecelia Geyer, who lived with Appellant and Appellant's fiancé at the time of the incident and paid for Appellant's mobile phone. Ms. Geyer and Appellant's fiancé testified that Appellant did not leave home on the night Ms. Thompson's home was invaded.

A jury convicted Appellant of burglary, robbery, conspiracy to commit burglary, theft by unlawful taking, receiving stolen property, and recklessly endangering another person. Appellant was sentenced, a post-sentence motion was granted in part, and Appellant was resentenced on February 11, 2016, as indicated above. Appellant filed a timely notice of appeal, but the appeal was discontinued based upon a procedural default. Appellant's appeal rights were reinstated through a PCRA petition, and a new notice of appeal was filed.

Appellant presents the following questions for our review.

I. Whether the court erred in allowing phone records to be introduced through Commonwealth witness John Clark?

II. Whether the court erred in allowing the Commonwealth to cross-examine Cecelia Geyer regarding telephone usage and/or information?

Appellant's brief at 4.

- 3 -

Both of Appellant's issues challenge the trial court's evidentiary rulings. Accordingly, the following principles apply.

> The admissibility of evidence is a matter addressed solely to the discretion of the trial court, and may be reversed only upon a showing that the court abused its discretion. For there to be abuse of discretion, the sentencing court must have ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Johnson*, 179 A.3d 1105, 1119-20 (Pa.Super. 2018) (internal citations and quotation marks omitted).

However, even if the trial court erred in making an evidentiary ruling, the judgment of sentence may be affirmed if that error was harmless. "[T]he doctrine of harmless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt." *Commonwealth v. Allshouse*, 36 A.3d 163, 182 (Pa. 2012) (internal quotation marks omitted). Harmless error exists when the Commonwealth shows one of the following:

> (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Green***, 162 A.3d 509, 519 (Pa.Super. 2017) (*en banc*)

(quoting ***Commonwealth v. Passmore***, 857 A.2d 697, 711 (Pa.Super.

2004)) (emphasis omitted).

Appellant's claims of error both relate to the Commonwealth's use of

phone records. His argument is as follows.

> The Commonwealth developed Mack and Atkinson as suspects . . . before they were able to charge Appellant as the third participant in the crime. The Commonwealth was able to do so through interviews conducted by Westmoreland County Detective John Clark, and statements provided by Mack and Atkinson. As a result of those interviews, the Commonwealth was able to obtain cell phone records for 412-478-6744, a number connected to Atkinson, and 724-708-2305 (AT&T), the number of the phone that Appellant had with him when arrested. Through the interview of Mack, the Commonwealth was able to determine that his cell phone number was 412-225-1237. The phone numbers for Appellant and Atkinson both belonged to women that the Commonwealth connected each to. In Appellant's case, the phone number for the phone that he had when arrested, was that of Cecelia Geyer.
>
> . . . .
>
> The Commonwealth then sought to introduce phone records for 412-478-6744 (Atkinson) and 724-708-2305 (Appellant). Appellant objected on the grounds that the records showed no contact between Appellant and Atkinson or Mack. Said records did not show any direct contact between Appellant and Atkinson or Mack, at any relevant time. It is unclear why the Commonwealth introduced these records.
>
> Though introduction of said records, or in an effort to make such relevant, Detective John Clark testified that the records showed "indirect contact" between Appellant and Atkinson; that Appellant could have talked with Atkinson through an Xbox; that the use of multiple cell phones is common in the "drug trade"; and then Detective Clark strangely referenced 724-470-7072 as a number Appellant could have made contact with Atkinson with.

> On the evening before the last day of trial, Detective Clark obtained records for 724-470-7072 (AT&T), which the Commonwealth then sought to introduce somehow. The trial court ruled such inadmissible. When Appellant called Cecelia Geyer as an alibi witness, the trial court then ruled that while these records could not be introduced, Geyer could be impeached with such to demonstrate her bias. The Commonwealth then utilized said records, in cross-examining Geyer to demonstrate only that she had a phone with the number 724-470-7072, inviting further speculation that Appellant could have called Atkinson from that phone.
>
> The cell phone records were simply irrelevant. Had they not been introduced or cross examination with the records, actually ruled inadmissible, not been permitted, the hearsay, speculation and conjecture permitted, or invited, by their improper introduction, would have been avoided.

Appellant's brief at 16-18.

From our review of the evidence, we tend to agree with Appellant that the phone records were of questionable relevance. However, we also agree with the Commonwealth that any error in their admission was harmless. Commonwealth's brief at 5-6. We are convinced that any error regarding the phone records could not have contributed to the verdict in this case.

The jury heard from both Mack and Atkinson that Appellant was the third co-conspirator, and, most significantly, **Appellant's blood was on the wall in Ms. Thompson's home**. With this evidence, we simply cannot conclude that the jury's verdict was based upon evidence that was either irrelevant or prejudicial.

"[A] defendant is entitled to a fair trial but not a perfect one." ***Allshouse***, ***supra*** at 182. In the absence of any indication that the trial

- 6 -

court's rulings regarding the phone records deprived Appellant of his right to a fair trial, we hold that Appellant is entitled to no relief from this Court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  10/18/2018