J-A24030-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL BLACKSTON | : | |
| | : | |
| Appellant | : | No. 1367 EDA 2022 |

Appeal from the Judgment of Sentence Entered March 29, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006313-2018

BEFORE: STABILE, J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.: **FILED APRIL 5, 2024**

Appellant Michael Blackston appeals from the judgment of sentence entered by the Philadelphia County Court of Common Pleas on March 29, 2022, after a jury convicted him of murder and related charges. Appellant claims that the trial court abused its discretion in overruling objections to testimony that detectives presented and in denying a motion for mistrial. After careful review, we affirm the judgment of sentence.

In March 2022, a jury convicted Appellant, Chad Rannels, Semaj Armstead, and Rashawn Combs of charges related to the December 2011 murder of Kevin Drinks ("Decedent"), whom they mistakenly believed was a

witness to a prior murder for which Rannels was awaiting trial.[1]  The relevant factual and procedural history is as follows.

In 2011, Philadelphia police arrested Rannels for the July 30, 2011 murder of Kristin Freeman.  While in prison awaiting his preliminary hearing, Rannels made at least fourteen recorded phone calls between September 27, 2011, and December 9, 2011, including several to Appellant and Armstead.  During these calls, Rannels provided an address and description of a person he believed was an eyewitness to the murder named John Fisher.  Rannels repeatedly instructed the co-defendants to be on their "A-Game."  Trial Ct. Op, 11/8/22, at 2.

On December 10, 2011, four days before Rannels' scheduled preliminary hearing, Appellant, while standing on a corner with Armstead, Combs, and Eugene Floyd, saw Decedent drive by them in a white truck.  Appellant stated, "That is the guy right there."  N.T., 3/23/22, at 15-16.  Floyd, to whom the Commonwealth granted immunity, testified at trial that he understood Appellant's statement to mean that the driver of the truck was the eyewitness to Mr. Freeman's murder.  **Id.**  It is undisputed that Decedent had an "uncanny" resemblance to Mr. Fisher and they both drove white trucks.  N.T., 3/24/22, at 93.

---

[1] Appellants' co-defendants have also appealed their judgments of sentence. The dispositions in **Commonwealth v. Rannels**, 1230 EDA 2022, and **Commonwealth v. Armstead**, 1269 EDA 2022, have been filed in conjunction with the instant case.  **Commonwealth v. Combs**, 3161 EDA 2022, which was submitted after the others, is pending before a different panel.

The four men immediately entered vehicles and followed Decedent in his white truck. Floyd drove Appellant in a Chevrolet minivan while Combs drove Armstead in a white PT Cruiser. The police eventually discovered that Armstead's sister owned the minivan and Appellant's girlfriend owned the PT Cruiser.

Appellant and the co-conspirators followed Decedent for approximately six hours while Decedent made deliveries. During this time, Appellant and the co-conspirators "maintain[ed] constant communication with each other." Trial Ct. Op. at 4. Floyd eventually parked the minivan close to the area where Decedent parked the white truck. Appellant then exited the minivan with a firearm and walked to the area where Decedent had parked the white truck. He returned a few minutes later and told Floyd that there were cameras near Decedent's truck. Floyd and Appellant then drove to a location approximately 15-20 minutes away. Appellant exited the minivan and returned soon after "wearing a black Muslim face covering and gown." *Id.* at 5.

Floyd and Appellant then drove back to the location where Decedent had parked the white truck. Appellant again exited the minivan with the firearm. He approached the white truck and fired five to six rounds into the truck, fatally shooting Decedent. Appellant then fled. Police arrived minutes later and transported Decedent to the hospital where he was pronounced dead.

During the initial investigation, police recovered surveillance video footage, from which they identified the PT Cruiser as a vehicle of interest. Detectives, however, did not connect the co-defendants to the crime until

2018, when they reviewed Rannels' prison phone calls and obtained the co-conspirators' cell phone records. Ultimately, the Commonwealth charged Appellant and his three co-defendants with murder and related crimes.

In March 2022, the trial court presided over a joint jury trial of Appellant and his co-defendants. At trial, Floyd testified to the narrative set forth above. The jury also heard the recordings of Rannels' prison phone calls as well as testimony relating to the cell phone records, which traced the co-conspirators' movements on the day of the murder.

The Commonwealth additionally presented Detective Thorsten Lucke, who had compiled into one video the surveillance videos from several cameras in the area around the murder. Detective Lucke testified about the video while the jury was watched it. N.T., 3/23/22, at 160-189. As described by the trial court, the surveillance video depicted the PT Cruiser following a white truck before the truck parked and then showed vehicles consistent with the PT Cruiser and the minivan circling the murder scene between 5:47 p.m. and 6:16 p.m., immediately before the 6:17 p.m. murder. The video also displayed an individual in "Muslim garb" approach the white truck twice. Trial Ct. Op. at 18-19. At no point did the video display anyone exiting either the PT Cruiser or the minivan.

On March 29, 2022, the jury convicted Appellant of First-Degree Murder, Conspiracy to Commit Murder, Firearms Not To Be Carried Without a License, Carrying Firearms on Public Streets or Public Property in Philadelphia, and

Possessing Instruments of Crime.[2]  On the same day, the trial court imposed a mandatory minimum sentence of life imprisonment without the possibility of parole for Murder; a consecutive sentence of 10 to 20 years of imprisonment for Conspiracy to Commit Murder; and concurrent sentences of 2.5 to 5 years of imprisonment for each of the remaining three charges.

On April 1, 2022, Appellant filed a post-sentence motion, claiming that the verdict was against the weight of the evidence.  On April 2, 2022, the trial court denied the motion.  On April 28, 2022, appellate counsel entered his appearance and filed a timely notice of appeal.  The trial court and Appellant complied with Pa.R.A.P. 1925.

Appellant raises the following issues to this Court:

1. Did the trial court err, abuse its discretion, and violate Pa.R.E[.] 1002 when it overruled a number of objections to the testimony of Detective Timothy Bass about events that he did not witness but saw on a portion of video that existed, but that was not presented to the jury?

2. Did the trial court err, abuse its discretion, and deprive Appellant of a fair trial secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution, when it denied Appellant's motion for a mistrial following testimony from Detective John Verrecchio about a "prior attempt to kill the witness?"

3. Did the trial court err, abuse its discretion, and deprive Appellant of a fair trial secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution, when

---

[2] 18 Pa.C.S. §§ 2502, 903(c), 6106(a)(1), 6108, 907(a), respectively.  The Commonwealth *nolle prossed* the charge of Persons Not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms, 18 Pa.C.S. § 6105(a)(1).

it overruled counsels' objections that permitted Verrecchio to improperly express opinions and conclusions?

Appellant's Br. at 2.

## A.

In his first issue, Appellant claims that the trial court erred and abused its discretion in overruling Appellant's objections to portions of Detective Timothy Bass' testimony, which Appellant claims violated the Best Evidence Rule, Pa.R.E. 1002. Appellant's Br. at 22-24. As Appellant is challenging an evidentiary ruling of the trial court, we will reverse "only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Green*, 162 A.3d 509, 516 (Pa. Super. 2017) (*en banc*) (citation omitted).

The Best Evidence Rule instructs that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise." Pa.R.E. 1002. An original need not be produced, however, if "the writing, recording, or photograph is not closely related to a controlling issue." *Id.* 1004(d). This Court has held that the Best Evidence Rule applies to surveillance videos and, thus, requires the admission of the original video, rather than merely testimony regarding the content of the video, where the video is necessary to prove the elements of the crime. *See Green*, 162 A.3d at 518.

At trial, Detective Bass testified regarding his 2011-12 investigation of the crime. In relevant part, he stated that the surveillance video showed "the perpetrator exit[ing] this white PT Cruiser[.]" N.T., 3/24/22, at 74. Upon

questioning, however, he clarified that while he remembered that the video showed the shooter coming from the location of the PT Cruiser, he "would have to look at the video" to determine if there was "actual footage" of the shooter exiting the vehicle. *Id.* at 76. Moments later, he reiterated that he could not "recall exactly whether [the shooter] was coming from inside the vehicle or form [sic] the area of the vehicle at this point." *Id.* at 77.

We highlight that Detective Bass, unlike Detective Lucke, did not make his initial comment while presenting the surveillance video to the jury. Rather, he made the initial comment while describing his investigation, which included using the surveillance video to identify the PT Cruiser as a vehicle of interest. The investigation of the PT Cruiser and its owner eventually linked Appellant to the murder.

Appellant contends that Detective Bass' testimony violated the Best Evidence Rule because the detective testified to events that he "did not personally witness but had reviewed on a portion of video that was never presented to the jury." Appellant's Br. at 22. Specifically, he argues that Detective Bass' statement that the shooter "exit[ed] the PT Cruiser" constituted a "critical identification" based upon video that the jury did not see. *Id.* at 23. Accordingly, he argues that the trial court abused its discretion by allowing Detective Bass' testimony about the shooter exiting the PT Cruiser.

As the trial court held, the record does not support Appellant's claim. Trial Ct. Op. at 27-28. Detective Bass did not testify to a video that was not shown to the jury; rather, the Commonwealth had shown the compilation

surveillance video to the jury earlier in the trial, and Detective Lucke had explained it to them. Detective Bass merely made an initial statement about his recollection of the surveillance video and then testified that he misspoke. Detective Bass repeatedly clarified his testimony by acknowledging that he could not remember if the video showed the shooter exiting the vehicle. N.T., 3/24/22, at 76-77. Accordingly, we agree with the trial court that the Best Evidence Rule did not apply to Detective Bass' initial misstatement because he did not make the misstatement while presenting the compilation of the surveillance videos to the jury and later corrected his testimony.

Moreover, the trial court emphasized that the Best Evidence Rule does not apply when the testimony "pertains to how and what is done while conducting an investigation." Trial Ct. Op. at 26 (citing *Green*, 162 A.3d at 521). As applied to the instant case, the court highlighted that Detective Bass' testimony regarding the content of the surveillance video focused on Detective Bass' investigation and using the video to identify the PT Cruiser as a vehicle of interest. *Id.* We agree with this analysis. Accordingly, this issue fails.[3]

_____

[3] Appellant also objects to Detective Bass' testimony because it references the shooter or the perpetrator, even though a pole blocked the relevant camera from displaying the exact moment of the shooting. Appellant's Br. at 23-24. In so doing, Appellant suggests that there is "some unshown video." *Id.* We find this argument frivolous as there is no suggestion that there is another video that captures the moment of the shooting. Rather, Detective Lucke testified earlier that "[t]he only angle that captures the location of the incident was the one we saw. . . .[U]nfortunately, there is a pole which covered the area right where the shooter was standing where the shooting incident
*(Footnote Continued Next Page)*

**B.**

In his second issue, Appellant asserts that the trial court erred in not granting a mistrial. Appellant's Br. at 25-28. An appellant court will not overturn a trial court's denial of a mistrial absent an abuse of discretion. ***Commonwealth v. Leap***, 222 A.3d 386, 392 (Pa. Super. 2019) (citation omitted).

It is well established that "[a] trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." ***Commonwealth v. Bryant***, 67 A.3d 716, 728 (Pa. 2013) (citation omitted). In reviewing a trial court's determination, we recognize that "[t]he trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury[.]" ***Commonwealth v. Rega***, 933 A.2d 997, 1016 (Pa. 2007) (citation omitted).

---

occurred." N.T., 3/23/22, at 194. Thus, there is no basis to support Appellant's suggestion about the existence of "some unknown video."

Moreover, to the extent Appellant challenges Detective Lucke's testimony based upon his use of the term "shooter," we find that Appellant waived this argument given that both the issue included in his Rule 1925(b) statement and his statement of questions in his brief to this Court address only Detective Bass' testimony and do not reference Detective Lucke's testimony. ***See*** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement . . . are waived; ***id.*** at 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

- 9 -

In cases where the trial court provides a cautionary instruction to address the incident giving rise to the motion for mistrial, we presume that the jury will follow the instruction. *Leap*, 222 A.3d at 392. Where the instruction is adequate, the grant of a mistrial is not necessary. *Id.*

At trial, Detective John Verrecchio testified regarding his investigation, specifically addressing the prison recordings, the cell phone records, and the process of obtaining search warrants for the cell phone records. The detective stated that he initially was not interested in Appellant's cell phone records because his cell phone went "off the network" at 3:03 p.m., three hours prior to the murder. N.T., 3/25/222, at 58-59. The detective explained, however, that he subsequently "went back to the records and reviewed them" after he "learned of a previous or prior attempt to kill the witness[.]" *Id.* at 59.

Appellant's counsel and Rannels' counsel objected and moved for a mistrial. After the jury left the courtroom, Appellant's counsel asserted that there had been no information to support the detective's statement regarding a "previous attempt to kill a witness." *Id.* at 60. Appellant's and Rannels' counsel additionally argued that the detective's testimony included a "monologue about search warrants" and contained "editorializing and prejudicial remarks." *Id.* at 60-62.

After hearing argument, the trial court denied the motion for mistrial, but offered to provide a cautionary instruction, which co-defendants' counsel later submitted. The trial court heard additional testimony from Detective Verrecchio outside the presence of the jury where he clarified that the "prior

attempt" related to the incident on the day of the murder when Appellant walked to the Decedent's white truck and returned, asserting that there were cameras around the truck. *Id.* at 75.

The trial court then instructed Detective Verrecchio to testify to his investigation without addressing the process of obtaining search warrants. After the jury returned, the trial court provided the following cautionary instruction:

> Before we broke, Detective Verrecchio was explaining what he did. Detective Verrecchio's testimony, the purpose is to explain what information he gathered, what he did with that information and how he proceeded forward with his investigation.
>
> It will be up to you, ladies and gentlemen, to evaluate the information being presented by Detective Verrecchio and what was done with that information; just like you're going to evaluate all other testimony being presented to you from all other witnesses.

*Id.* at 77. While the trial court did not include the portion of the counsels' proposed instruction that the jury should disregard Detective Verrecchio's reference to "any prior attempt to murder a witness[,]" none of the defendants' counsel objected to this omission and thus, waived any objection to it. *Id.* at 68-69, 77.

Based on our review, we conclude that the trial court did not abuse its discretion in denying Appellant's request for a mistrial. In addressing Appellant's claim, the trial court found that the reference to a prior attempt was a "reasonable characterization" of the shooter walking toward the Decedent's truck and discovering cameras, an event about which Floyd also

- 11 -

testified. Trial Ct. Op. at 34, 36. Moreover, the trial court opined that its cautionary instruction to the detective regarding future testimony together with the curative jury instruction "prevent[ed] any incidental prejudice that resulted from Detective Verrecchio's testimony" and rendered the grant of a mistrial unnecessary as courts presume that a jury will follow a court's instructions. Trial Ct. Op. at 36.

After considering the trial court's assessment of the testimony presented to the jury and its cautionary instructions to which counsel did not object, we conclude that Appellant has not demonstrated that the trial court abused its discretion in denying a mistrial. Additionally, we find that Appellant waived any objection to the court's curative instructive as counsel did not object either when the court explained to counsel the instruction it intended to give or after it gave the instruction. Accordingly, no relief is due on this issue.

**C.**

In his final issue, Appellant contends that the trial court erred in allowing Detective Verrecchio to testify about obtaining search warrants, which involves expert testimony, when the trial court never qualified him as an expert. Appellant's Br. at 28-29. Appellant asserts that Detective Verrecchio's description of the search warrant process was not related to his investigation but served to alert the jury that "numerous educated individuals" found the information in the search warrants "important and deeply connected to more than one homicide." *Id.* Appellant argues that the curative instruction was insufficient because it did not "specifically remind[] the jury that all witnesses

were to be evaluated in same[sic], and no witness, should be taken to be more important or credible on the basis of a uniform." ***Id.*** at 29.

After review, we conclude that the trial court did not abuse its discretion in addressing the challenges to Detective Verrecchio's testimony about the search warrants.[4] Rather, the trial court instructed Detective Verrecchio to confine his testimony to his investigation and issued a cautionary instruction to the jury. Specifically, the court reminded the jury that it was up to them "to evaluate the information being presented by Detective Verrecchio and what was done with that information; just like you're going to evaluate all other testimony being presented to you from all other witnesses." N.T., 3/25/22, at 77. At no point did any counsel object to this instruction; thus, Appellant waived any challenge to the sufficiency of the instruction. Moreover, as we presume the jury followed the instruction, we conclude that the trial court did not abuse its discretion in addressing Appellant's challenges to Detective Verrecchio's testimony about the search warrants.

Accordingly, given that none of Appellant's issues warrant relief, we affirm the judgment of sentence.

Judgment of Sentence affirmed.

---

[4] As set forth above, we will reverse an evidentiary ruling of the trial court, "only upon a showing that the trial court clearly abused its discretion." ***Commonwealth v. Green***, 162 A.3d at 516 (citation omitted).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>4/5/2024</u>