J-S67011-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TROY L. NELSON | : | |
| | : | No. 2749 EDA 2016 |
| Appellant | | |

Appeal from the Judgments of Sentence Entered August 22, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0005920-2015,
CP-51-CR-0803982-2006

BEFORE:   GANTMAN, P.J., MUSMANNO, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                **FILED NOVEMBER 03, 2017**

Appellant Troy L. Nelson appeals from the judgments of sentence entered by the Court of Common Pleas of Philadelphia County after Appellant was convicted of aggravated assault, simple assault, and recklessly endangering another person (REAP).  As Appellant was on probation when he committed these crimes, the lower court also entered an order revoking his probation.  After careful review, we affirm.

On October 27, 2010, Appellant was convicted of possession with intent to deliver a controlled substance (PWID), criminal conspiracy, and other drug related offenses.  On October 4, 2012, Appellant was given an aggregate sentence of 11½ to 23 months' house arrest.

After a violation hearing on October 25, 2013, the Honorable Frank Palumbo entered an order in which it purported to revoke Appellant's parole,

_____
*   Former Justice specially assigned to the Superior Court.

order Appellant to serve the remainder of his term on house arrest, and impose an additional sentence of one year of probation. Appellant did not appeal this determination. On December 11, 2013, the lower court found Appellant had violated of the terms of his house arrest and immediately paroled him despite the Commonwealth's objection. We observe that Appellant was reparoled two subsequent times on June 24, 2014 and February 29, 2015.

Thereafter, on May 20, 2015, Appellant was arrested for the brutal attack of his ex-girlfriend, Jennifer Santana. On that day, Ms. Santana went to Appellant's home to pick up the couple's seven-year-old daughter, Natalia. Before Ms. Santana arrived, she contacted police to request that officers supervise her interaction with Appellant, who had sent Ms. Santana threatening text messages and voicemails earlier that day in violation of a Protection from Abuse (PFA) order.

While Ms. Santana waited for the police, she noticed an unidentified man talking to Appellant at his front door. Believing this was a safe opportunity to interact with Appellant, Ms. Santana approached Appellant, asked for her daughter, and informed Appellant that she had notified police of this exchange. Appellant refused, telling Ms. Santana that Natalia did not want to come with her. When Ms. Santana leaned into the home to observe her daughter, Appellant pulled her inside and locked the door.

Appellant began to profess his love for Ms. Santana and then interrogated her about her relationship with her new boyfriend, angrily asking

if she was in love with him. Although Ms. Santana initially tried to reason with Appellant, she became frustrated and told him that she was leaving. Appellant then began to choke Ms. Santana so violently that the couple fell on a nearby bed. Ms. Santana, who is significantly smaller than Appellant,[1] tried to resist the attack and poke him in the eye. When she grabbed Appellant's face, he bit her fingers and continued to choke her. Ms. Santana remembered not being able to breathe, feeling her body "go cold," and seeing "stars" and "lights." Notes of Testimony (N.T.), 6/3/16, at 22-30.

Appellant stopped choking Ms. Santana when their daughter begged him to stop. Once Ms. Santana was able to regain her breath, she pleaded with Appellant to let her and Natalia leave. When Appellant refused, Ms. Santana desperately tried to escape by kicking the window and yelling, but she was unsuccessful. Appellant ordered Ms. Santana to sit on the floor and told her that he "ha[d] nothing to live for now" as she had "ruined [his] life" by taking away his "family." N.T., 6/3/16, at 36.

Appellant resumed his attack, again grabbing Ms. Santana's neck with both hands, banging her head on the floor, and choking her until she lost consciousness. When Ms. Santana regained consciousness, she observed Natalia on top of her, crying, "Daddy, you're killing Mommy." N.T., 6/3/16, at 38. Ms. Santana noticed she was wet and asked Natalia what had

---

[1] The victim reported that she was 5'5" and weighed approximately 165-170 pounds. Police reports indicated that Appellant is 6'2" and weighs approximately 250 pounds.

- 3 -

happened; Natalia told her that "[D]addy poured water on you." N.T., 6/3/16, at 38. Ms. Santana begged Natalia to run away, but she refused. Ms. Santana asked Appellant not to "do this in front of [his] kids," referring to Natalia and Appellant's ten-year-old son. Appellant then allowed the children to stand in the hallway. N.T., 6/3/16, at 40.

Pacing back and forth, Appellant told Ms. Santana that he was going to kill her and then kill himself. At that point, Natalia came back into the room and began to plead with Appellant once more. Appellant became hysterical, dropped to his knees, and ordered Ms. Santana to "take [Natalia] before I kill all of you." N.T., 6/3/16, at 41. Ms. Santana ran with the children out of the house to the nearest street corner, where she observed that the police had arrived. Once Ms. Santana shared her account of the attack, the officers placed Appellant under arrest. As a result of the attack, Ms. Santana sustained bruises and abrasions on her neck, a neck strain, finger sprain, and a bite wound on her finger. Ms. Santana claimed that she was in pain for more than a week after the attack, missed several days of work, had a swollen throat, and explained that her neck felt like she had been "in a really bad car accident." N.T., 6/3/16, at 53.

Appellant was charged with aggravated assault, simple assault, and REAP in connection with his attack on Ms. Santana. These charges were docketed at CP-51-CR-0005920-2015. Thereafter, Appellant waived his right to a jury trial and proceeded to a bench trial. On June 10, 2016, the trial court convicted Appellant of all charges. On August 22, 2016, the trial court

- 4 -

sentenced Appellant to six to twelve years' imprisonment to be followed by five years of probation on the aggravated assault charge as well as concurrent two year terms of probation for the simple assault and REAP charges.

On the same day, the trial court also found that Appellant's assault of Ms. Santana was a direct violation of his probation for PWID, and thus, revoked his probation and sentenced Appellant to five to ten years' imprisonment, set to run concurrently with Appellant's aggravated assault sentence.

On August 24, 2016, Appellant filed one post-sentence motion for his convictions on both dockets, raising claims with respect to the sufficiency and weight of the evidence supporting his aggravated assault conviction as well as challenges to the legality and discretionary aspects of both of his sentences. On August 29, 2016, the trial court denied this motion as to both dockets. On August 31, 2016, Appellant filed notices of appeal at each docket with the trial court.[2] We will review the appeals together for the sake of judicial economy.

_____

[2] From our review of the record, we surmise that Appellant submitted identical notices of appeal at each docket. In each document, he asserted that he was appealing from the judgment of sentence entered on August 22, 2016 and listed both docket numbers. As the notices of appeal contain different time-stamps from the Court of Common Pleas, it appears that Appellant appropriately filed separate notices of appeal in compliance with our rules of appellate procedure, which provide that "[w]here [ ] one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed." Note to Pa.R.A.P. 341, *citing* **Commonwealth v. C.M.K.**, 932 A.2d 111, 113 n.3 (Pa.Super. 2007) (quashing appeal when one notice of appeal was filed on behalf of two defendants).

Appellant raises the following issues for review:

1. Is the evidence sufficient as a matter of law to sustain [Appellant's] conviction for the crime of [aggravated assault under] 18 Pa.C.S.A. § 2702 (with respect to CP-51-CR-0005920-2015) where the evidence of record does not establish that the complainant suffered serious bodily injury and the evidence does not establish that [Appellant] attempted to cause serious bodily injury as serious bodily injury was not sustained and [Appellant] could have caused such injury if it was his intent?

2. Is the verdict for the crime of [aggravated assault under] 18 Pa.C.S.A. § 2702 (with respect to CP-51-CR-0005920-2015) against the weight of the evidence and so contrary to the evidence that it shocks one's sense of justice where the evidence of record does not establish that the complainant suffered serious bodily injury and the evidence does not establish that [Appellant] attempted to cause serious bodily injury as serious bodily injury was not sustained and [Appellant] could have caused such injury if it was his intent?

3. Is the sentence imposed for [aggravated assault under] 18 Pa.C.S.A. § 2702 (with respect to CP-51-CR-0005920-2015) unduly harsh, excessive and unreasonable under the circumstances where the sentencing court failed to take into account all relevant and necessary factors to be considered by a sentencing court, and/or based the sentence upon factors or evidence which should not be relied upon by a sentencing court,

_____

Nevertheless, even assuming that Appellant only filed one notice of appeal for the two orders in this case, we note that our courts have declined to quash a single appeal challenging multiple orders "provided that the issues are nearly identical, no objection to the appeal has been raised, and the period for appeal has expired." *In Interest of P.S.,* 158 A.3d 643, 647–48 (Pa.Super. 2017) (quoting *K.H. v. J.R.*, 573 Pa. 481, 826 A.2d 863, 870 (2003) (citation omitted)) (overlooking the appellant's procedural error of filing a single appeal raising intertwined challenges related to his new adjudications of delinquency and a probation revocation disposition when the prosecution did not object and the appeal period had expired). In this case, the Commonwealth has not objected and the time period for appeal in the two dockets has expired.

and confinement in a state correctional facility for the term imposed is not the least restrictive sentence necessary to effectuate the aims of [] Pennsylvania's sentencing laws?

4. Is this sentence imposed for a violation of probation – on the charge of possession with intent to deliver ("PWID") and criminal conspiracy (with respect to CP-51-CR-0803982-2006) – illegal where the underlying probationary sentence itself is illegal?

5. Is the sentence imposed for a violation of probation – on the charge of possession with intent to deliver ("PWID") and criminal conspiracy (with respect to CP-51-CR-0803982-2006) – unduly harsh, excessive and unreasonable under the circumstances?

Appellant's Brief at 8-9 (renumbered for ease of review).

Appellant first argues that there was insufficient evidence to support his aggravated assault conviction. In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted...in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Green*, 162 A.3d 509, 523 (Pa.Super. 2017) (citations omitted).

Appellant was convicted of aggravated assault under Section 2702(a)(1) of the Crimes Code, which provides that "[a] person is guilty of aggravated assault if he … attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life."  18 Pa.C.S.A. § 2702(a)(1).  Serious bodily injury has been defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

Specifically, Appellant claims his aggravated assault convictions cannot stand as the Commonwealth failed to show he attempted to cause the victim serious bodily injury or actually caused her serious bodily injury.   Appellant does not dispute any of the factual allegations contained in the victim's account of the assault, but argues that the victim only sustained bruises and scratches which did not constitute serious bodily injury.  In addition, Appellant argues that he did not attempt to cause the victim serious bodily injury because he stopped his attack and chose not to inflict serious bodily injury on the unconscious victim in her defenseless state when there was nothing preventing him from doing so.

Regardless of whether the victim sustained serious bodily injury, the evidence clearly shows Appellant attempted to cause the victim serious bodily

injury. With respect to this issue, this Court stated the following in our decision in **Commonwealth v. Fortune**, 68 A.3d 980, 984 (Pa.Super. 2013) (*en banc*):

> For aggravated assault purposes, an attempt is found where an accused who possesses the required, specific intent acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another. An intent ordinarily must be proven through circumstantial evidence and inferred from acts, conduct or attendant circumstances.
>
> The Pennsylvania Supreme Court in **Commonwealth v. Alexander**, 477 Pa. 190, 383 A.2d 887 (Pa. 1978) created a totality of the circumstances test to be used to evaluate whether a defendant acted with the necessary intent to sustain an aggravated assault conviction. In **Commonwealth v. Matthew**, 589 Pa. 487, 909 A.2d 1254 (2006), that Court reaffirmed the test and articulated the legal principles which apply when the Commonwealth seeks to prove aggravated assault by showing that the defendant attempted to cause serious bodily injury. Specifically, the Court stated, in relevant part, that:
>
>> **Alexander** created a totality of the circumstances test, to be used on a case-by-case basis, to determine whether a defendant possessed the intent to inflict serious bodily injury. **Alexander** provided a list, albeit incomplete, of factors that may be considered in determining whether the intent to inflict serious bodily injury was present, including evidence of a significant difference in size or strength between the defendant and the victim, any restraint on the defendant preventing him from escalating the attack, the defendant's use of a weapon or other implement to aid his attack, and his statements before, during, or after the attack which might indicate his intent to inflict injury. **Alexander**, at 889. **Alexander** made clear that simple assault combined with other surrounding circumstances may, in a proper case, be sufficient to support a finding that an assailant attempted to inflict serious bodily injury, thereby constituting aggravated assault.

> *Matthew*, 909 A.2d at 1257 (citation and quotation marks omitted). ***The Court indicated that our case law does not hold that the Commonwealth never can establish a defendant intended to inflict bodily injury if he had ample opportunity to inflict bodily injury but did not inflict it.*** Rather, the totality of the circumstances must be examined as set forth by *Alexander*.

*Fortune*, 68 A.3d at 984 (some citations omitted) (emphasis added). *See also Commonwealth v. Hall*, 574 Pa. 233, 241, 830 A.2d 537, 542 (2003) (emphasizing that "[w]here the intention of the actor is obvious from the act itself, the finder of fact is justified in assigning the intention that is suggested by the conduct").

In this case, Appellant clearly took a substantial step towards causing the victim serious bodily injury when he grabbed her neck with both hands, smashed her head repeatedly on the floor, and choked her so vigorously that she lost consciousness twice. Appellant's attempts to minimize the severity of the attack are unavailing; the victim was extremely fortunate to survive Appellant's violent attack and escape without serious bodily injury.

Moreover, the totality of the circumstances establish that Appellant intended to inflict serious bodily injury on the victim. Appellant expressly verbalized his intent to cause the victim's death several times during the encounter, indicating that he wished to kill his family and then kill himself. N.T., 6/3/16, at 38-41. Despite the victim's desperate attempts to defend herself and her daughter, Appellant used his significant advantage in size and strength to force the victim into submission. After biting the victim's fingers and choking her to the point that she lost consciousness, Appellant only

relented after his seven-year-old daughter repeatedly begged Appellant to stop assaulting her mother.

In light of Appellant's brutality, Appellant's attempt to argue that he demonstrated "restraint" in refraining to cause the victim serious bodily injury is disingenuous. We decline to reward Appellant for his self-serving allegations that he chose not to inflict serious bodily injury on the victim when he had ample opportunity to do so. As there was ample evidence to show Appellant attempted to cause the victim serious bodily injury, Appellant's sufficiency challenge to his aggravated assault conviction is meritless.

Second, Appellant argues that his aggravated assault conviction is not supported by the weight of the evidence. In reviewing a challenge to the weight of the evidence, our standard of review is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

**Commonwealth v. Champney**, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003). To successfully challenge the weight of the evidence, a defendant must prove the evidence is "so tenuous, vague and uncertain that the verdict

shocks the conscience of the court." ***Commonwealth v. Windslowe***, 158 A.3d 698, 712 (Pa.Super. 2017) (citations omitted).

In raising this challenge to the weight of the evidence, Appellant reiterates the exact arguments he presented in his sufficiency claims, suggesting that the trial court should not have given any weight to his "hollow" threats to harm the victim, and should have inferred that Appellant never had intent to cause the victim serious bodily injury when he chose not to continue his violent attack. Appellant's Brief, at 30. Appellant essentially asks this Court to reweigh the evidence and substitute his suggested outcome for the trial court's verdict, which is improper. ***Commonwealth v. Thompson***, 106 A.3d 742, 758 (Pa.Super. 2014) (emphasizing that "this Court is precluded from reweighing the evidence and substituting our credibility determination for that of the fact-finder"). We discern no abuse of discretion in the trial court's decision to reject Appellant's challenge to the weight of the evidence.

Third, Appellant argues that the trial court abused its discretion in imposing his sentence for aggravated assault by improperly considering evidence which should not be relied upon by a sentencing court, failing to take into account all relevant and necessary factors, and refusing to impose the least restrictive sentence necessary to effectuate the aims of Pennsylvania's sentencing laws. These claims challenge the discretionary aspects of Appellant's sentence.

It is well-established that "[a] challenge to the discretionary aspects of sentencing does not entitle an appellant to review as of right."

*Commonwealth v. Bynum-Hamilton*, 135 A.3d 179, 184 (Pa.Super. 2016). In order to invoke this Court's jurisdiction to address such a challenge, the appellant must satisfy the following four-part test: the appellant must (1) file a timely notice of appeal pursuant to Pa.R.A.P. 902, 903; (2) preserve the issues at sentencing or in a timely post-sentence motion pursuant to Pa.R.Crim.P. 720; (3) ensure that the appellant's brief does not have a fatal defect as set forth in Pa.R.A.P. 2119(f); and (4) set forth a substantial question that the sentence appealed from is not appropriate under the Sentencing Code under 42 Pa.C.S.A. § 9781(b). *Id*. Appellant filed a timely notice of appeal, preserved his sentencing claim in a timely post-sentence motion, and submitted a Rule 2119(f) statement in his appellate brief.

We may now determine whether Appellant has raised a substantial question for our review. "The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa.Super. 2015). This Court has provided as follows:

> A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.
>
> When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant. And, of course, the court must consider the sentencing guidelines.

*Id.* (internal citations omitted).

Appellant's assertion that the trial court gave insufficient weight to the victim's letter asking for leniency for Appellant does not raise a substantial question. "This Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." *Commonwealth v. Miklos*, 159 A.3d 962, 970 (Pa.Super. 2017) (quoting *Commonwealth v. Disalvo*, 70 A.3d 900, 903 (Pa.Super. 2013)). However, Appellant's claim that the trial court considered improper factors in fashioning his sentence does raise a substantial question for our review. *Commonwealth v. Downing*, 990 A.2d 788, 792 (Pa.Super. 2010) (concluding that the appellant's claim that the trial court relied on an improper factor raised a substantial question permitting review).

In reviewing a challenge to the discretionary aspects of sentence, we emphasize that:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa.Super. 2015) (quotation omitted). In reviewing the sentence, an appellate court shall have regard for: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the opportunity of the sentencing

court to observe the defendant, including any presentence investigation; (3) the findings upon which the sentence was based; and (4) the guidelines promulgated by the commission. *See* 42 Pa.C.S.A. § 9781(d)(1)–(4).

A sentence may be found to be unreasonable if it fails to properly account for the four statutory factors, or if it "was imposed without express or implicit consideration by the sentencing court of the general standards applicable to sentencing" as set forth in 42 Pa.C.S.A. § 9721(b), *i.e.*, the protection of the public, the gravity of the offense in relation to the impact on the victim and the community, and the rehabilitative needs of the defendant. *Commonwealth v. Walls*, 592 Pa. 557, 569, 926 A.2d 957, 964 (2007). When a defendant is given a standard range sentence, we review the sentence to determine if the trial court's application of the guidelines would be "clearly unreasonable." 42 Pa.C.S.A. § 9781(c)(2). Moreover, "a trial court is required to state its reasons for the sentence on the record." 42 Pa.C.S.A. § 9721(b). "This requirement can be satisfied by the trial court indicating, on the record, that it has been informed by a pre-sentence report." *Commonwealth v. Pennington*, 751 A.2d 212, 217 (Pa.Super. 2000).

Appellant argues that the trial court improperly considered facts related to several of Appellant's prior arrests even though the charges were ultimately withdrawn. However, our review of the record confirms that the trial court did not consider these facts in imposing Appellant's sentence as it indicated that defense counsel was "correct" when he made a timely objection to the prosecutor's reference to these details. N.T., 8/22/16, at 32. To the extent

that Appellant is arguing the trial court erred in considering his prior arrests and criminal record, we note that "[n]ot only does [this Court's] caselaw authorize a sentencing court to consider unprosecuted criminal conduct, the sentencing guidelines essentially mandate such consideration when a prior record score inadequately reflects a defendant's criminal background." *Commonwealth v. Schrader*, 141 A.3d 558, 564 (Pa.Super. 2016)

Moreover, we reject Appellant's claim that the trial court's sentences in this case were "clearly unreasonable." In this case, the lower court imposed standard range sentences upon reviewing the record and the pre-sentence investigation report. We observe that:

> [w]here the sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code.

*Commonwealth v. Griffin*, 65 A.3d 932, 937 (Pa.Super. 2013) (citations and internal quotation marks omitted).

The lower court's standard range sentences imposed for his assault of Ms. Santana were in no way an abuse of discretion. Appellant dragged the victim into his home in violation of a PFA order and violently attacked her in front of the couple's seven-year old daughter. Appellant smashed the victim's head on the ground and strangled her so vigorously that she lost consciousness twice. Given the gravity of this offense and Appellant's

disregard of an existing PFA order, the trial court expressed concern for the protection of the victim and the couple's daughter. The trial court indicated that he did not give the victim's letter asking for leniency for Appellant "much credence" due to Appellant's vast criminal history and inability to comport with the rules of probation, given that Appellant had been arrested twenty-one times, convicted ten times, and had violated probation or parole twenty-one times. Trial Court Opinion (T.C.O.), 1/9/17, at 11. As a result, the trial court concluded that Appellant has demonstrated that he is not "an appropriate candidate for an alternative [punishment] to incarceration." *Id*. We find no merit to Appellant's challenge to the trial court's discretion in imposing his sentences for aggravated assault, simple assault, and REAP at docket number CP-51-CR-0005920-2015.

As stated above, these convictions served as the basis for the revocation of Appellant's probation at docket CP-51-CR-0803982-2006. Appellant's remaining issues challenge the sentence imposed on this docket. To review, it appears that Appellant was originally sentenced in October 2012 to an aggregate sentence of 11½ to 23 months' house arrest for PWID and conspiracy charges. On October 25, 2013, Appellant appeared for a violation hearing in which the Honorable Frank Palumbo purported to revoke Appellant's parole, ordered him to serve the rest of his parole on house arrest, and imposed an additional sentence of one year of probation. Appellant never challenged this ruling. Upon conviction for aggravated assault and related

charges, on August 22, 2016, the lower court revoked Appellant's probation and sentenced him to five to ten years' imprisonment to run concurrently with the aggravated assault sentence.

Appellant argues that the lower court's sentence imposed on August 22, 2016 upon the revocation of his probation was illegal because the underlying probationary sentence imposed on October 25, 2013 was illegal. However, this Court has held that a defendant may not collaterally attack an original conviction and sentence in an appeal of the revocation of probation. *Commonwealth v. Beasley*, 570 A.2d 1336, 1338 (Pa.Super. 1990). Rather, "any collateral attack of the underlying conviction must be raised in a petition pursuant to the Post Conviction Relief Act [(PCRA)]." *See* 42 Pa.C.S.A. §§ 9541-9546.

As a result, we find the revocation court was correct in concluding that it had no jurisdiction to address Appellant's collateral challenge to the legality of the underlying sentence outside of the context of the PCRA. Regardless of the merits of Appellant's claim, we may not review his challenge to the legality of the original sentence as he failed to raise this issue in a timely PCRA petition. It is well-established that "the PCRA's timeliness requirements are jurisdictional in nature and must be strictly construed." *Commonwealth v. Leggett*, 16 A.3d 1144, 1145 (Pa.Super. 2011) (citations omitted). It is well-established that collateral challenges to the legality of sentence must be raised in a PCRA petition within one year of the date that the sentence becomes final

unless the petitioner can plead and prove that one of the three statutory exceptions set forth in 42 Pa.C.S.A. § 9545(b)(1) applies. ***Commonwealth v. Voss***, 838 A.2d 795, 800 (Pa.Super. 2003).

Appellant seeks to challenge the imposition of the underlying sentence of probation imposed by Judge Palumbo on October 23, 2013. As Appellant did not challenge this ruling in the lower court or file a direct appeal, his sentence became final on Monday, November 23, 2013 when the time period for seeking review in this Court expired. ***See*** 42 Pa.C.S. § 9545(b)(3) (stating that "a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review"). Thus, in order to comply with the PCRA's one-year time limitation, Appellant was required to file a timely PCRA petition by November 23, 2014. Because Appellant did not challenge Judge Palumbo's ruling until he filed his post-sentence motion on August 24, 2016 and has not alleged that this claim should be reviewed under the PCRA pursuant to an applicable timeliness exception, the trial court did not have jurisdiction to address his challenge to the legality of sentence. We need not review this claim further.

In Appellant's final claim, he asserts that the lower court abused its discretion in imposing an "unduly harsh, excessive, and unreasonable" sentence upon the revocation of his probation. Appellant's Brief, at 9. Nevertheless, Appellant failed to include a discussion of this issue with citation

to relevant case law and corresponding analysis in his appellate brief. Appellant's bald assertion does not entitle him to review on appeal. ***See Commonwealth v. Murchinson***, 899 A.2d 1159, 1162 (Pa.Super. 2006) (finding claim to be waived by the appellant's failure to develop meaningful argument with specific reference to the record in support of his claims).

For the foregoing reasons, we affirm Appellant's judgments of sentence at both dockets (CP-51-CR-0005920-2015 and CP-51-CR-0803982-2006).

Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/3/2017</u>