J-S43042-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE A. DEJESUS-PEREZ | : | |
| | : | |
| Appellant | : | No. 665 MDA 2023 |

Appeal from the Judgment of Sentence Entered April 6, 2023
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0000553-2022

BEFORE:   McLAUGHLIN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:   **FILED: NOVEMBER 18, 2024**

Jose A. DeJesus-Perez appeals from the judgment of sentence following his conviction for driving under the influence of a controlled substance – first offense (DUI), possession of drug paraphernalia, and driving without a license.[1] We affirm.

The trial court summarized the facts and procedural history as follows:

> Manely Houghtalen (hereinafter "Mr. Houghtalen") is the owner of H&S Motors, Incorporated, an auto repair company, located at 1100 North Cameron Street, Harrisburg, Pennsylvania. (Notes of Testimony, Bench Trial 4/6/23 ("N.T.") at 17). On July 28, 2021, Mr. Houghtalen and an employee, Sharon Purkey (hereinafter "Ms. Purkey") were headed out to lunch when Ms. Purkey came inside and said there was a "really weird person" outside. (*Id.*) She testified that she saw a male standing near a vehicle in the

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3802(d)(2), 35 P.S. § 780-113(a)(32), and 75 Pa.C.S.A. § 1501(a), respectively.

parking lot and approached him to let him know the shop was closed for lunch. (N.T. at 2[8]). The male was subsequently identified as [DeJesus-Perez]. [DeJesus-Perez] got very close to her, and Ms. P[ur]key testified that she was very uncomfortable. (*Id.*) Although [DeJesus-Perez] was speaking to her, Ms. Purkey testified that it was incoherent. (*Id.*) She further testified that [DeJesus-Perez] kept going back and forth to his vehicle, then would walk around and talk to himself. (*Id.*)

Thereafter, Mr. Houghtalen went outside, approached the male, and reiterated that they were closed. (N.T. at 18). Mr. Houghtalen also testified that [DeJesus-Perez] was acting very bizarrely – he approached them several times, circled Mr. Houghtalen's vehicle several times, appeared very menacing, and stood in front of them with a big grin on his face. (*Id.*) [DeJesus-Perez] was sweating and speaking in broken English, but not making any sense. (*Id.*) Mr. Houghtalen testified that [DeJesus-Perez] also went to his vehicle and fidgeted around several times. (N.T. at 23).

At some point, Mr. Houghtalen called 911 to report the bizarre behavior. (N.T. at 20, 24). Mr. Houghtalen reported that [DeJesus-Perez] had arrived in a white Dodge Caliber and that it was parked in partially in the alley and partially in the parking lot of H&S Motors, Inc. (N.T. at 21). Although the vehicle was not parked in a designated parking space, it was not completely blocking traffic in the alleyway. (*Id.*) Mr. Houghtalen also provided police with the license plate for the Dodge Caliber. (N.T. at 22).

H&S Motors, Inc. is equipped with sixteen (16) high-definition surveillance cameras that capture every inch of the property, as well as lighting for nighttime. (N.T. at 19). Although neither Mr. Houghtalen nor Ms. Purkey observed [DeJesus-Perez] driving, it was captured on the surveillance cameras. (*Id.*) Mr. Houghtalen testified that he sat down with police the day of the incident to review the surveillance videos. (*Id.*) He testified that the videos showed [DeJesus-Perez] made a wide turn off Herr Street into the alleyway behind H&S Motors, Inc., pulled across several designated parking spaces in H&S Motors, Inc. parking lot, and parked. (N.T. at 20). The vehicle was not parked there earlier in the day. (N.T. at 23).

Officers Erik Henry (hereinafter "Officer Henry") and Cynthia Kreiser (hereinafter "Officer Kre[is]er") of the City of Harrisburg Bureau of Police were dispatched to H&S Motors, Inc. (N.T. at 32). Upon arriving on scene, Officers Henry and Kreiser observed [DeJesus-Perez] walking across H&S Motors, Inc. parking lot toward North Cameron and Herr Streets. (N.T. at 39). Officer Kreiser asked [DeJesus-Perez] to stop several times as there was heavy traffic in the area, and it appeared [DeJesus-Perez] was going to walk into the street. (*Id.*) She testified that [DeJesus-Perez] was dazed and ignored her requests to stop. (N.T. at 39-40).

Both officers were equipped with body cameras and their entire interaction with [DeJesus-Perez] was recorded and preserved. Portions were played during the non-jury trial, including a portion where [DeJesus-Perez] offered to move his vehicle when he was told his vehicle was partially in the alleyway. Officer Kreiser testified that [DeJesus-Perez] showed signs of impairment and intended to arrest him only for public drunkenness until Mr. Houghtalen informed her that there was video footage of [DeJesus-Perez] driving.(N.T. at 40-41).

Although Officer Kreiser did not personally observe [DeJesus-Perez] drive, she did watch the surveillance video footage with Mr. Houghtalen. (N.T. at 43). She testified that she observed [DeJesus-Perez] drive the white Dodge Caliber west on Herr Street at a slow speed. (*Id.*) [DeJesus-Perez] then made a wide right turn on to Julia Alley and almost struck a building. (N.T. at [43]-44). He then parked halfway on H&S Motors, Inc. parking lot, halfway on the street. (*Id.* [at 44]). Mr. Houghtalen provided Officer [Kreiser] a USB drive of the video that day. (*Id.*) Officer Kreiser turned it over to Officer Henry who put the video onto two (2) discs and placed them into evidence. (*Id.*) Officer Kreiser did not conduct standard field sobriety tests because [DeJesus-Perez] indicated that he had a herniated disc and a pinched nerve. (N.T. at 41). She testified that based on her observations and attempted communication with [DeJesus-Perez] that he was not capable of safely driving, and after watching the video, [DeJesus-Perez] was arrested for DUI. (N.T. at [45], 49).

Due to [DeJesus-Perez's] vehicle partially blocking a roadway, Officer Kreiser requested supervisor permission to

- 3 -

tow the vehicle. (N.T. at 44). An inventory search was conducted prior to the vehicle being towed. (N.T. at 45). Officer Henry searched the driver's side and found a partially smoked marijuana blunt on the driver's side floorboard in plain view. (N.T. at 32-33). He also found two (2) syringes in the driver's side door pocket. (N.T. at 33). Officer Kreiser conceded that the police report does not indicate that there was residue in either syringe, nor whether it was used. (N.T. at 35-36). Officer Kreiser searched the passenger side and recovered an empty pack of Hi5 2020 (like potpourri) in a little compartment above the radio, as well as a syringe with a needle and an empty cigar wrapper in the glove compartment. (N.T. at 45). The potpourri bag did not contain any residue. (*Id.*)

Trial Court Opinion, filed June 28, 2023, at 3-6.

Before the trial began, the Commonwealth disclosed that the video recording from the repair shop showing DeJesus-Perez driving into the parking lot, which Houghtalen and the police officers viewed on the date of the incident, was not available because the Commonwealth had received the wrong video and had not checked it until just before trial, at which point the video was no longer available. N.T. at 5-6, 11-13. DeJesus-Perez moved to preclude Houghtalen and the police officers from testifying to what they saw on the video on the ground that their testimony concerning the video's contents was barred by the best evidence rule. *Id.* at 6-16. The trial court denied DeJesus-Perez's motion and permitted the witnesses who viewed the repair shop video to testify as to its contents. *Id.* at 16, 19-20, 43-44.

After a bench trial, the court found DeJesus-Perez guilty of the above offenses. It sentenced DeJesus-Perez to six months' probation with the first 10 days on house arrest plus a $1,000 fine for the DUI conviction, 12 months'

concurrent probation and a $50 fine for possession of drug paraphernalia, and a $200 fine for driving without a license. This appeal followed.

DeJesus-Perez raises the following issue: "Whether the trial court erred when it allowed the Commonwealth to proceed without the video of Mr. Dejesus-Perez's driving when the Commonwealth had ample opportunity to acquire the original or the copy of the video surveillance and failed to do so[?]" DeJesus-Perez's Br. at 5 (suggested answer omitted).

DeJesus-Perez argues that the admission of the testimony of Houghtalen and the officers concerning the content of the repair shop's video should have been precluded by the best evidence rule because the video was not preserved. He maintains that the video was the best evidence to establish whether he was under the influence while he was driving. *Id.* at 11. He argues that "[w]ithout this evidence, whether he had been driving erratically prior to contact with Mr. Houghtalen, or if he became inebriated after he pulled into the parking lot, is pure speculation." *Id.* (emphasis removed). DeJesus-Perez points out that no one observed him driving until the viewing of the video. *Id.* at 23. He maintains that the Commonwealth's failure to verify the video until the eve of trial after having it in its possession for 21 months constituted bad faith such that the testimony as to the video's contents should have been excluded. *Id.* at 10.

"The admissibility of evidence is a matter addressed to the discretion of the trial court and may be reversed on appeal only upon a showing that the

court abused its discretion." ***Buchhalter v. Buchhalter***, 959 A.2d 1260, 1263 (Pa.Super. 2008) (citation omitted).

The best evidence rule requires that the original writing, recording, or photograph, or a duplicate of the original, must generally be produced to prove its content. ***See*** Pa.R.E. 1002, 1003. Although the best evidence rule traditionally applied only to writings, it has been extended to surveillance video recordings. ***See Commonwealth v. Green***, 162 A.3d 509, 517-18 (Pa.Super. 2017) (*en banc*). Thus, the best evidence rule requires the admission of the original video, rather than testimony about the content of the video, where the video is necessary to prove the elements of the case. ***Id.*** at 518.

An exception to the best evidence rule allows the admission of testimony as to the contents of a video recording where it is shown that the video is lost or destroyed through no fault of the party that seeks to introduce such testimony. ***See*** Pa.R.E. 1004(a); ***Green***, 162 A.3d at 518. Pennsylvania Rule of Evidence 1004 provides, in relevant part:

> An original is not required and other evidence of the content of a writing, recording, or photograph is admissible if:
>
> (a) all the originals are lost or destroyed, and not by the proponent acting in bad faith[.]

Pa.R.E. 1004(a). Under this provision, "[i]f the originals are not available at trial in criminal cases, through no fault of the Commonwealth, secondary evidence is permissible." ***Commonwealth v. Dent***, 837 A.2d 571, 589 (Pa.Super. 2003).

Here, following the incident, the police reviewed the videos with the owner of the shop, who then put them on a USB stick that he gave to the police. The police put the USB stick in an evidence locker, in August 2021, where it remained until shortly before trial. A few weeks before trial, the prosecution asked the police for the videos. It turned out that the videos on the USB stick were from the wrong day. The police could not get the videos of the correct day from the shop at that time because they had been automatically written over. The videos were thus destroyed through no fault of the Commonwealth acting in bad faith. Certainly, the police or the prosecution could have reviewed the videos and discovered the shop owner's error before the videos were written over, but the failure to do so here did not amount to bad faith. The Commonwealth reasonably expected that the USB stick contained the correct videos.

Moreover, any error in this regard was at most harmless. "[A] violation of the best evidence rule is subject to the harmless error test and does not automatically rise to the level of reversible error *per se* in every case where the rule is truly violated." **Green**, 162 A.3d at 519. An evidentiary error is harmless if an appellate court concludes, beyond a reasonable doubt, that the error could not have contributed to the verdict. **See Commonwealth v. Fitzpatrick**, 255 A.3d 452, 500 (Pa. 2021). The Commonwealth has the burden of establishing the harmlessness of the error. **Commonwealth v. Passmore**, 857 A.2d 697, 711 (Pa.Super. 2004). The Commonwealth satisfies the harmless error burden when it is able to show:

(1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial [e]ffect of the error so insignificant by comparison that the error could not have contributed to the verdict.

*Id.* (citation omitted) (alteration in original).

Here, the trial court found that there was evidence other than the videos that showed DeJesus-Perez drove the car. *See* Trial Ct. Op. at 7-8. We agree that the evidence, without the videos, was sufficient to prove that fact beyond a reasonable doubt. The prosecution introduced at trial the officers' body camera footage showing police telling DeJesus-Perez that they were going to have to tow his car because it was blocking an alley. DeJesus-Perez responded that if they let him go, he would move it, and said for the second time that he needed a mechanic. He then said, "I came over here to the mechanic shop, that's it."

The trial court treated DeJesus-Perez's statements as an admission that he had driven to the shop. DeJesus-Perez's statements were sufficient to prove inferentially beyond a reasonable doubt that he had driven. The admission of the officers' testimony describing the content of the missing video would therefore not have contributed to the verdict and was harmless.

Judgment of sentence affirmed.

Judge King joins the memorandum.

Judge Colins files a concurring and dissenting memorandum.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/18/2024