J-S11037-24

2024 PA Super 313

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NICHOLAS FISCHER | : | |
| | : | |
| Appellant | : | No. 1050 EDA 2023 |

Appeal from the Judgment of Sentence Entered March 27, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0003812-2020

BEFORE:   BOWES, J., McLAUGHLIN, J., and COLINS, J.[*]

OPINION BY COLINS, J.:                    **FILED DECEMBER 31, 2024**

Appellant, Nicholas Fischer, appeals from the judgment of sentence imposed following his conviction of two counts of harassment.  After careful review, we affirm.

On September 16, 2020, Appellant was charged with three counts of harassment and one count of stalking related to conduct in August and September 2020, directed towards his ex-fiancée ("Victim").  Appellant and Victim are parents to a child, who was approximately two years old as of the date of the relevant events ("Child").  N.T., 1/31/23, at 183; N.T., 2/1/23, at 23-25.   Appellant and Victim were in a ten-year relationship, but the relationship ended prior to August 2020.  N.T., 2/1/23, at 23-28, 146-47, 180-81.

_____

[*] Retired Senior Judge assigned to the Superior Court.

At a jury trial commencing on January 31, 2023, the Commonwealth presented testimony from two witnesses, Victim and Officer Megan Bevenour, who was a patrol officer and detective with the Bethel Township Police Department during the relevant period. Officer Bevenour became familiar with Appellant in Summer 2020, when he called 911 at least seven times requesting wellness checks at the residence where Victim and Child lived. N.T., 1/31/23, at 176-80, 185. Officer Bevenour conducted two of the wellness checks and observed nothing out of the ordinary, with Child well-nourished, dressed appropriately, and happy. *Id.* at 183-84, 249. Eventually, Appellant was told to stop requesting the checks unless he could provide specific evidence that Child was in danger. *Id.* at 184-85, 225.

In September 2020, Victim met with Officer Bevenour and told the officer that Appellant's communications via text message, telephone, and email were causing her concern for her and Child's safety. *Id.* at 186-87. Victim showed Officer Bevenour a September 6, 2020 text message that was purportedly from someone Officer Bevenour knew to be an Assistant District Attorney in the Delaware County District Attorney's Office. N.T., 1/31/23, at 198-201; N.T., 2/1/23, at 17, 159, 178; Exhibit C-2. The message expressed the "extraordinary levels of worry and stress" Appellant was allegedly feeling regarding Victim and Child's whereabouts and requested that Victim notify the sender of the message when she returned home from a weekend trip. N.T., 1/31/23, at 217-18; Exhibit C-2, at 1-2. Officer Bevenour called the telephone number associated with the text message and Appellant, whose voice she well

knew from multiple prior conversations, picked up.  N.T., 1/31/23, at 199-200, 209, 225, 266; N.T., 2/1/23, at 13.

Victim testified at trial that, after August 2020, Appellant called and texted her on her phone, attempted to call her through Facebook, and made social media posts about her "nonstop," at all times of day and night.  N.T., 2/1/23, at 28, 111.  This included one occasion when Appellant called her over 100 times.  *Id.* at 33.  Victim stated that Appellant would sometimes use different telephone numbers and would attempt to contact her on her work office phone.  *Id.* at 28-29, 32, 112.  Victim testified that the communications were "[n]erve-wracking" and left her feeling "terrified" and "uneasy" based on threats Appellant made.  *Id.* at 32, 34, 44, 48-49, 99, 159.  Victim further stated that she "could barely perform at [her] job" during the period when she was receiving the messages because she was always concerned that Appellant would show up at her house while she was gone.  *Id.* at 75, 99.

At trial, Victim was shown copies of eleven emails that Appellant sent her between August 11 and September 14, 2020, which Victim forwarded to other email accounts before they were printed.  N.T., 2/1/23, at 35-111; Exhibits C-5 to C-6, C-8 to C-16.[1]  The emails generally concerned Appellant's

---

[1] Victim forwarded nine of the emails from her personal email account to her work email account for printing because she did not have a printer at home. N.T., 2/1/23, at 35, 38, 92, 94, 98, 173; Exhibits C-5 to C-6, C-8 to C-14. She also forwarded one of the emails to Officer Bevenour and one of the emails to an employee of the District Attorney's Office.  N.T., 2/1/23, at 99, 108; Exhibits C-15, C-16.

frustration that Victim was not allowing him contact with Child and included veiled threats towards Victim and her family. *See, e.g.*, Exhibit C-5 ("if you don't ensure our daughter is reunited with me this evening your life will change forever tomorrow as will your mother's . . . tread carefully You're being watched"); Exhibit C-6 ("I'm fairly certain that you are not ready for what is to come in fact I know you're not and I can't tell you this time our daughter's life depends on it."); Exhibit C-13 ("all this stuff's adding up to a nightmare for you [] and maybe it's the truth undeniably[.]  The nightmare exists and there's nothing I can do about changing it").

Appellant objected at the outset of Victim's testimony to the email exhibits, arguing that they violated the best evidence rule because they were forwarded from Victim's personal email account to another account before they were printed.  N.T., 2/1/23, at 8; *see also id.* at 38, 43, 52, 63, 69, 73, 77, 92, 97, 102, 109 (defense counsel noting standing objection to the admission of each of the eleven emails).  The trial court overruled the objection on the basis that the exhibits were admissible as duplicates of the original emails.  *Id.* at 8-9.[2]

_____

[2] While the trial court stated that the forwarded emails were admissible as "copies as described in Article 10" of the Pennsylvania Rules of Evidence, it appears that the court intended to admit the emails as "duplicates" under the Rules.  N.T., 2/1/23, at 8; *see* Pa.R.E. 1001(e) (defining a duplicate as "a copy produced by," *inter alia*, an "electronic . . . process or technique that accurately reproduces the original").

J-S11037-24

After deliberation, the jury found Appellant guilty of harassment—repeated communication in an anonymous manner and harassment—repeated communication in another manner and not guilty of harassment—repeated communication at extremely inconvenient hours and stalking.[3]  On March 27, 2023, the trial court sentenced Appellant to an aggregate term of twenty-four months' probation with restrictive conditions, with credit for twelve months of pre-trial detention spent on electronic home monitoring.  Sentencing Order, 3/27/23.  Appellant then filed this timely appeal.[4]

Appellant presents the following issue for our review:

> Whether the trial court erred when it permitted the prosecution to introduce evidence of forwarded emails and related testimony in violation of the Best Evidence Rule, since the documents are inadmissible as originals or duplicates, were subject to potential manipulation, and leave out portions of the communications?

Appellant's Brief at 5.  Appellant argues that, as "writings" under the Pennsylvania Rules of Evidence, the forwarded email exhibits admitted by the Commonwealth do not constitute either "originals" or "duplicates" as defined under the Rules.  Appellant contends that, unlike text message screenshots, which were held admissible under the best evidence rule in **Commonwealth v. Talley**, 265 A.3d 485 (Pa. 2021), forwarded emails "are not verbatim

_____

[3] 18 Pa.C.S. §§ 2709(a)(5), 2709(a)(7), 2709(a)(6), and 2709.1(a)(2), respectively.

[4] Appellant filed a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal on June 12, 2023, and the trial court filed an opinion pursuant to Rule 1925(a) on September 20, 2023.

reproductions of originals" and therefore cannot be considered duplicates for purposes of the best evidence rule. Appellant's Brief at 14. Appellant asserts that, even if the exhibits qualify as duplicates, the trial court should not have allowed them to be admitted because there were "genuine questions to their accuracy" as Victim left out "important parts of the conversations" and could have modified the content of the original messages. *Id.* at 15.[5]

We review a trial court's evidentiary ruling to determine whether the court abused its discretion. *Talley*, 265 A.3d at 530.

> An appellate court will not find an abuse of discretion based on a mere error of judgment, but rather where the trial court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. Importantly, an appellate court should not find that a trial court abused its discretion merely because the appellate court disagrees with the trial court's conclusion.

*Id.* (citation omitted).

_____

[5] In his brief, Appellant challenges the admission of twelve exhibits, Exhibits C-5 through C-16. *See, e.g.*, Appellant's Brief at 15. However, Exhibit C-7 was a text message that Victim received, took screenshots of, and then sent the screenshots to her work computer for printing. *See* N.T., 2/1/23, at 45-46; Exhibit C-7. Because Appellant's argument relates only to the forwarding of emails and not screenshots of text messages and in light of the fact that Appellant specifically argues that screenshots are more reliable duplicates than forwarded emails, we assume that Appellant only challenges the admission of the eleven forwarded emails and not the screenshot of a text message. To the extent we would address the admissibility of Exhibit C-7, we would find it admissible for the reasons stated in *Talley*, which is discussed *infra*.

The best evidence rule requires that an original or duplicate of a writing must generally be introduced to prove the content of a writing that is closely related to a controlling issue in the case. *See* Pa.R.E. 1002, 1003, 1004(d); ***Talley***, 265 A.3d at 531. Under the Pennsylvania Rules of Evidence, "[a] 'writing' consists of letters, words, numbers, or their equivalent set down in any form." Pa.R.E. 1001(a).

> An "original" of a writing . . . means the writing . . . itself or any counterpart intended to have the same effect by the person who executed or issued it. For electronically stored information, "original" means any printout--or other output readable by sight--if it accurately reflects the information.

Pa.R.E. 1001(d). A "duplicate" is defined as "a copy produced by a mechanical, photographic, chemical, electronic, or other equivalent process or technique that accurately reproduces the original." Pa.R.E. 1001(e). "A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Pa.R.E. 1003; *see also **Talley***, 265 A.3d at 531 ("While the rule no longer bars the routine use of duplicates, a duplicate cannot substitute for an original if the opponent raises a genuine claim as to the authenticity of the original or if admission of the duplicate otherwise is unfair to the opponent.").

***Talley*** is the most instructive precedent for the present matter. In that case, the Commonwealth admitted into evidence, over Talley's best-evidence-rule objection, screenshot captures of text messages he sent to a former

romantic partner at his trial for stalking and terroristic threats. *Talley*, 265 A.3d at 500-01, 504. Our Supreme Court concluded that the screenshots were closely related to a controlling issue in the case as the "contents [of the messages] were the *actus reus* of" the charges against Talley; therefore, the printed screenshots were only admissible as originals or duplicates under our Rules of Evidence. *Id.* at 533-34 (emphasis omitted). The Court determined that the screenshots were duplicates as they were created through "a photographic process that produces an exact copy of whatever content appeared on a digital device's interface at the time it was taken." 265 A.3d at 535; *see* Pa.R.E. 1001(e). The Court further found that Talley had not called into question specific features of the original messages that undermined the reliability of the screenshot duplicates nor had he identified any unfairness associated with the admission of the screenshots, notwithstanding that certain information was omitted during the screen capture process, including the sender's information and the time of the messages. *Talley*, 265 A.3d at 504, 534-37. Therefore, our Supreme Court affirmed the trial court's admission of the screenshots. *Id.* at 537.

Here, there is no dispute that the eleven forwarded emails constituted "writings" within the meaning of the best evidence rule. *See* Pa.R.E. 1001(a), 1002; *Talley*, 265 A.3d at 533 (concluding that text messages were writings under our Rules of Evidence). Moreover, we agree with Appellant that the emails were closely related to a controlling issue, as the emails were offered by the Commonwealth to prove Appellant's harassment of Victim. *See* Pa.R.E.

1004(d); **Talley**, 265 A.3d at 533-34.[6]   Therefore, the printouts of the forwarded emails were admissible only to the extent they were "original" writings under the Rules or as "duplicates" where no genuine question was raised about the authenticity of the original messages, and it was not unfair to admit the duplicates under the circumstances.  Pa.R.E. 1002, 1003; **Talley**, 265 A.3d at 531; **see also Commonwealth v. Green**, 162 A.3d 509, 518-19 (Pa. Super. 2017) (*en banc*).

We conclude that the trial court did not abuse its discretion in finding that the forwarded emails were duplicates of the original email messages.

_____

[6] The Commonwealth argues that the eleven forwarded emails were not closely related to a controlling issue in this case—and therefore the production of the original or duplicates of the emails was not required—because "the harassing nature and manner in which the communications occurred and [Appellant's] intent when sending the communications are the necessary basis to satisfy the elements" of the harassment offenses, not the content of the messages themselves.  Commonwealth's Brief at 15-18.  We agree that the forwarded emails were not relevant to the charge of harassment—repeated communication in an anonymous manner, 18 Pa.C.S. § 2709(a)(5), as this charge related to the text message Appellant sent under the name of an Assistant District Attorney and other anonymous communications and not the forwarded emails, sent from Appellant's known email address, that are the subject of this appeal.  However, the content of the forwarded emails was closely related to the other charge of which Appellant was convicted, harassment—repeated communication in another manner, 18 Pa.C.S. § 2709(a)(7), which criminalizes repeated communication, without any legitimate intent, for the purpose of harassing, annoying, or alarming another person.  **See Commonwealth v. Papp**, 305 A.3d 62, 75 (Pa. Super. 2023).  As we have explained, while this harassment offense does not concern itself with the subject matter of the defendant's speech based on First Amendment concerns, the content of the defendant's communication is nevertheless relevant to show that the communication was not legitimate and that the defendant's intent was to harass, alarm, or annoy the victim.  **See id.** at 75, 78.

While not photographic duplicates as in **Talley**, the forwarded emails were created through an electronic process that reproduced the original electronic messages in their entirety, as well as the sender's and receiver's email addresses, the time and date the messages were sent, and the subject line of the email. **See** Pa.R.E. 1001(e) (defining a duplicate to include "a copy produced by a[n] . . . electronic . . . process or technique that accurately reproduces the original"); Exhibits C-5 to C-6 and C-8 to C-16.[7] Indeed, the forwarded messages in this instance included more information than the screenshots in **Talley**, where the sender's identity and date and time of sending was omitted. **Cf. Talley**, 265 A.3d at 504, 534-37. While the exhibits admitted at trial contain additional information, namely Victim's subsequent forwarded messages, this does not alter the fact that the Appellant's messages to Victim and their relevant header information were reproduced in the forwarded emails that were printed and admitted at trial.

Further, Appellant has not raised a genuine question as to the authenticity of the original messages or the fairness of admitting the forwarded messages. **See** Pa.R.E. 1003. While Appellant argues that "[t]he

_____

[7] **See also** Merriam-Webster.com, https://www.merriam-webster.com/dictionary/email (defining "email" as "messages sent and received electronically through an email system") (last accessed Nov. 11, 2024); Wikipedia.org, https://en.wikipedia.org/wiki/Email_forwarding (noting that no "specific technical meaning" for email forwarding exists but that manual client-based forwarding at issue here generally "inline quotes the message below the main text of the new message" and "preserves original attachments as well as a choice of selected headers (e.g. the original From and Reply-To.)") (emphasis omitted) (last accessed Nov. 11, 2024).

very method of forwarding an email allows original content to be completely altered" and therefore there is no "guarantee[] of accuracy," Appellant's Brief at 14, his complaint is not that the email program's **method** failed to create an accurate duplicate through forwarding but rather that the original messages were "subject to manipulation" by Victim during the forwarding process. N.T., 2/1/23, at 8. However, the potential for manipulation exists when any duplicate is created, and Appellant has not called into question the authenticity of any specific portion of the original messages, either in the trial court or this Court. *See Talley*, 265 A.3d at 535-36 (concluding that Talley had not raised a genuine question about the authenticity of the screenshots where he failed to "call into question specific features of the originals that would undermine the reliability of the duplicates in establishing the elements of the criminal offenses"). Importantly, Victim authenticated each of the eleven email exhibits prior to their admission into evidence, confirming that the printouts were identical to the messages she received from Appellant on the dates in question. N.T., 2/1/23, at 35-37, 40-42, 50-51, 62-63, 67-69, 72, 76, 91-92, 96-97, 100-02, 108-09.

Appellant further argues that it was unfair to admit the forwarded emails because they did not disclose other portions of the communications between Victim and Appellant that "could have provided additional context," as well as exculpatory information or impeachment evidence. Appellant's Brief at 11, 15; *see also* N.T., 2/1/23, at 142-43, 160 (Victim acknowledging on cross-examination that she did not provide police with all of her responses to

Appellant's text messages and emails). However, Appellant's argument is not that the duplicate, forwarded emails excluded some portion of the correspondence between Appellant and Victim that was present in the originals but instead that there were some other communications that Victim did not print and provide to authorities. As Appellant did not allege "some infirmity with the duplicate itself," **Talley**, 265 A.3d at 535 (citation omitted), he cannot show that "circumstances make it unfair to admit the duplicate" instead of the original emails. Pa.R.E. 1003; **see Talley**, 265 A.3d at 536 (to show unfairness of admitting duplicate under Rule 1003, a criminal defendant must show that he was "prejudiced by not requiring production of the original writing," such as by proof that the "duplication process distorted the wording of the original messages" or omitted relevant content).[8]

_____

[8] Like Appellant, the Concurrence focuses on the "danger" of manipulation of the text of the original email while an email is being forwarded but does not contest that the method of forwarding an email creates an accurate copy of the original, underlying email. Concurring Opinion at 9. Notably, the Concurrence's concerns apply equally to email replies, and therefore would call into question the authenticity of any email in an email chain, aside from the most recent email in the chain. Moreover, as the Concurrence observes, rapid technological advances facilitating the manipulation of images since the publication of **Talley** raise concerns about the reliability of screenshots not considered by our Supreme Court. **Id.** at 6 n.2. Such questions about the authenticity of images, video, and other electronic media will only grow in the coming years.

Rather than ruling out whole categories of electronic documents based upon the potential for fraud as the Concurrence would do, we believe that the better approach, consistent with our Rules of Evidence and **Talley**, is to presumptively allow the admission of duplicates of electronic documents that are shown to have been created through a reliable method, subject to the
*(Footnote Continued Next Page)*

Because Appellant has not raised any genuine question of authenticity or unfairness with respect to the email exhibits presented at trial, the lower court did not abuse its discretion in overruling Appellant's best evidence rule objection. Having found no merit to Appellant's issue on appeal, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judge McLaughlin joins the Opinion.

Judge Bowes files a concurring opinion.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/31/2024

---

opponent demonstrating a genuine question of the original's authenticity or some other unfairness related to the evidence in that specific case. **See** Pa.R.E. 1001(e); Pa.R.E. 1003; **Talley**, 265 A.3d at 531. Contrary to the Concurrence, we do not believe that requiring a criminal defendant to demonstrate a genuine question of authenticity or unfairness would place an unfair burden on the defendant as the question of a document's admissibility can be resolved at a motion *in limine* prior to trial, outside the presence of the jury. We additionally note that, even where the electronic document is allowed over a best-evidence-rule objection, the opponent may always argue that the factfinder should ascribe no weight to that evidence based upon the possibility that it was created fraudulently.