J-S11037-24

2024 PA Super 313

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
NICHOLAS FISCHER :
:
Appellant : No. 1050 EDA 2023

Appeal from the Judgment of Sentence Entered March 27, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0003812-2020

BEFORE: BOWES, J., McLAUGHLIN, J., and COLINS, J.[*]

CONCURRING OPINION BY BOWES, J.: **FILED DECEMBER 31, 2024**

Since I find a screenshot to be created through a process that is
materially distinct from forwarding an email, I cannot conclude that the
forwarded emails in this case were admissible as duplicates under the best
evidence rule. Rather, I would hold that the trial court abused its discretion
in admitting those eleven emails. Nonetheless, given the overwhelming
evidence against Appellant, I would deem this error harmless and still affirm
Appellant's judgment of sentence. Accordingly, I am compelled to submit this
concurring opinion.

_____

[*] Retired Senior Judge assigned to the Superior Court.

To be clear, I take no issue with the Majority's outline of the history of this case,[1] nor its recitation of the pertinent principles guiding this Court's review of whether the trial court abused its discretion. Where my analysis diverges, however, is at the point of deeming forwarded emails admissible under the best evidence rule. To adequately explain my position, a brief recap of the applicable rules of evidence is necessary.

According to Pa.R.E. 1002, "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise." Pa.R.E. 1002. An original is defined as the writing "itself or any counterpart intended to have the same effect by the person who executed or issued it." Pa.R.E. 1001(d). Regarding "electronically stored information," like emails, "'original' means any printout--or other output readable by sight--if it accurately reflects the information." *Id*.

Notwithstanding this general rule, "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Pa.R.E. 1003. "Duplicate" is defined as "a copy produced by a mechanical, photographic, chemical, electronic, or other equivalent process or technique that accurately reproduces the original." Pa.R.E. 1001(e).

_____

[1] I do, however, take exception with the Majority's characterization of how the trial court treated this evidence. I explain my position in that regard more fully *infra*.

Relevantly, the comments to these rules, taken in tandem, explain the reasoning for the duplicate exception. First, the comment to Rule 1001 provides as follows:

> Pennsylvania law has permitted the use of duplicates produced by the same impression as the original, as is the case with carbon copies[, but] has not treated other duplicates as admissible unless the original was shown to be unavailable through no fault of the proponent. For this reason, the definition of duplicates, other than those produced by the same impression as the original, is new to Pennsylvania law. The justification for adopting the new definition is discussed in the Comment to Pa.R.E. 1003.

Pa.R.E. 1001. Rule 1003's comment, in turn, sets forth further elucidation:

> Under the traditional best evidence rule, copies of documents were not routinely admissible. This view dated back to the time when copies were made by hand copying and were therefore subject to inaccuracy. On the other hand, Pennsylvania courts have admitted copies made by techniques that are more likely to produce accurate copies. For example, when a writing is produced in duplicate or multiplicate each of the copies is treated as admissible for purposes of the best evidence rule. ***See Brenner v. Lesher***, 2 A.2d 731 (Pa. 1938); ***Pennsylvania Liquor Control Bd. v. Evolo***, 203 A.2d 332 (Pa.Super. 1964).
>
> In addition, various Pennsylvania statutes have treated some accurate copies as admissible. ***See*** 42 Pa.C.S. § 6104 (governmental records in the Commonwealth); 42 Pa.C.S. § 5328 (domestic records outside the Commonwealth and foreign records); 42 Pa.C.S. § 6106 (documents recorded or filed in a public office); 42 Pa.C.S. § 6109 (photographic copies of business and public records); 42 Pa.C.S. §§ 6151-59 (certified copies of medical records).
>
> The extension of similar treatment to all accurate copies seems justified in light of modern practice. Pleading and discovery rules such as Pa.R.C.P. No. 4009.1 (requiring production of originals of documents and photographs etc.) and Pa.R.Crim.P. 573(B)(1)(f) and (g) (requiring disclosure of originals of documents, photographs and recordings of electronic surveillance) will usually

provide an adequate opportunity to discover fraudulent copies. As a result, Pa.R.E. 1003 should tend to eliminate purely technical objections and unnecessary delay. In those cases where the opposing party raises a genuine question as to authenticity or the fairness of using a duplicate, the trial court may require the production of the original under this rule.

Pa.R.E. 1003, Cmt. (citations altered). Finally, Rule 1002's comment explains why the original is generally considered the best evidence:

The rationale for the rule was not expressed in Pennsylvania cases, but commentators have mentioned four reasons justifying the rule.

(1) The exact words of many documents, especially operative or dispositive documents, such as deeds, wills or contracts, are so important in determining a party's rights accruing under those documents.

(2) Secondary evidence of the contents of documents, whether copies or testimony, is susceptible to inaccuracy.

(3) The rule inhibits fraud because it allows the parties to examine the original documents to detect alterations and erroneous testimony about the contents of the document.

(4) The appearance of the original may furnish information as to its authenticity.

5 Weinstein & Berger, *Weinstein's Evidence* § 1002(2) (Sandra D. Katz rev. 1994).

Pa.R.E. 1002, Cmt.

With this background in mind, I turn to **Commonwealth v. Talley**, 265 A.3d 485 (Pa. 2021), the seminal case concerning electronic documents, and that relied upon by the Majority. In **Talley**, our Supreme Court was tasked with determining whether screenshots of text messages were admissible as counterparts or duplicates pursuant to the best evidence rule. The Court

explained that "[a] screenshot is an image created by copying part or all of the display on a computer screen at a particular moment. By definition, a screenshot is a copy produced by an electronic process." *Talley*, 265 A.3d at 534 (cleaned up).

The Court determined that "because the copies of the messages were not created in order to have the same intended effect as the original messages, the screenshots constituted duplicates, not counterparts." *Id*. Therefore, it explained that screenshots were admissible under the best evidence rule as duplicates if they adhered to the following:

> In order to ensure that only "accurate" reproductions of original writings may be used as evidence, Rule 1001(e) focuses on the "process or technique" that is used to create the copy. *Id*. 1001(e). The rule reflects the reality that "[t]he exact words of many documents, especially operative or dispositive documents, . . . are so important in determining a party's rights accruing under those documents." *Id*. 1002, Cmt. A process that creates an accurate reproduction of an original writing helps to inhibit fraud. *Id*. Screenshotting is one such process. Generally speaking, a screenshot is a photographic process that produces an exact copy of whatever content appeared on a digital device's interface at the time it was taken. Typically, it guarantees precision and does not suffer from the inaccuracy that the rule seeks to prevent. *Cf. id*. 1003, Cmt. ("Under the traditional best evidence rule, copies of documents were not routinely admissible. This view dated back to the time when copies were made by hand copying and were therefore subject to inaccuracy."). At trial, [the witness] testified that the messages in the screenshots that she turned over to law enforcement were exactly as they appeared on the display of her cellphone when she received them. Talley does not assert that the screenshotting process altered the words contained in the text messages. While he challenges the omission of certain digital information from the trial exhibits—the metadata—those are not the kinds of inaccuracies with which Rule 1001(e) is concerned. Rather, the rule seeks to abate dangers of mis[-]transmission and

fraud. But Talley has not established that screenshotting is a method that presents such dangers in theory or in fact.

*Talley*, 265 A.3d at 535. Therefore, the *Talley* Court held that the screenshots qualified as duplicates and were admissible under the best evidence rule.[2]

Turning to the instant case, on the second day of trial, the court held an off-the-record discussion with counsel regarding the admissibility of the forwarded emails. *See* N.T. 2/1/23, at 3 (mentioning that matters were discussed off the record before trial started that morning). In recounting what occurred, Appellant's counsel and the trial court had the following exchange:

> [APPELLANT'S COUNSEL]: So, the second issue I wanted to raise, because all the, like the documents that are planning on being brought in to show there are communications from [Appellant] so they'd fall under, like, admission of party opponent statements and party opponent; I understand all that. Authentication's not really an issue either because [Victim] is going to testify this is what she got, this is what she saw. The objection I have to all of these being introduced into evidence and published to the [j]ury is that it violates the best evidence rule, that these were all screenshots that were taken by [Victim]. Some of the emails were emails that were forwarded from herself to another email account, and, therefore, subject to manipulation. And I don't believe that these documents qualify as best evidence rule. That being said, there is a lot of them and I don't want to get up and object to every single time. I'm just trying to preserve the argument for appeal so that it's not deemed waived, but I don't want to keep interrupting the flow of the trial by making objection after objection for each document that they're going to try to introduce.

_____

[2] While this Court is bound by *Talley*, I observe that as the world continues to change and become more technologically sophisticated, the necessary indicia of reliability that screenshots enjoyed at the time *Talley* was issued may diminish. Indeed, given the ease of editing screenshots currently, they already lack some of that reliability.

- 6 -

THE COURT:  I take a slightly different view but not necessarily completely different.  The best evidence rule has been codified in the Rules of Evidence.  It is now Article 10.  These are copies as described in Article 10 that are offered and are admissible under 10, Article 10, based on the foundation laid yesterday as to the one document by . . . the Commonwealth.  I do, however, tend to agree with you that the originals of these documents were in the exclusive control of [Victim] and not [Appellant].  And they are not coming into this courtroom for reasons I don't know and apparently are not available at this time to be used, the originals, [s]o, we discussed off the record, and I'll say it now, you know, I do think the missing document instruction to the [j]ury at the conclusion of the case is well-founded based on that since the Commonwealth is relying heavily upon the nature of these communications in writing as a foundation for each of the four charges that are asserted.  So, I will give you that instruction at the end.[3]  I do agree in part with your motion.  I do rely on the codification of the best evidence rule under Article 10 of the Pennsylvania Rules of Evidence that the documents that have been used so far are admissible under Article 10.   But I, nevertheless, agree with you in the sense that there was more available to [Victim] than is in this courtroom for purpose of the trial in terms of documents. Those are my rulings.

*Id*. at 7-9.

Based upon this, my esteemed colleagues maintain "that the court intended to admit the emails as 'duplicates[.]'"  Majority at 4 n.2.  I cannot agree.  The trial court, while describing the emails as copies, never found that they constituted duplicates.  Indeed, in contravention of its conclusion at trial that the Commonwealth was relying upon the writings to prove the charged crimes, the court held in its Rule 1925(a) opinion that the best evidence rule did not apply because the content of the emails was not material to the elements of the crime.  *See* Trial Court Opinion, 9/20/23, at unnumbered 17-

---

[3] I note that the court offered this instruction to the jury, but specifically only in relation to missing incident reports.

18. Since the court never held that the emails were admissible under the best evidence rule as duplicates, insofar as the Majority affirms, it does so on a basis different from that of the trial court.

Notably, in explaining its holding that the best evidence rule did not apply, the trial court referred to Appellant's complaint that "the **screenshots** of the emails and text messages violated the [b]est [e]vidence [r]ule because the screen shots were subject to manipulation and omissions." Trial Court Opinion, 9/20/23, at unnumbered 12-13 (emphasis added). However, this was a misstatement because the challenged emails were forwarded and then printed; they were not screenshots. As I will explain *infra*, this distinction is critical. Thus, I would first hold that the trial court erred insofar as it mischaracterized the process of creating the copy.[4]

The Majority holds that the emails were admissible as duplicates.[5] In doing so, it equates the forwarded emails to the screenshots in ***Talley***:

_____

[4] In his Rule 1925(b) statement, Appellant challenged the screenshots of the text messages as well, and the trial court considered the admissibility of the text messages and emails together. Appellant no longer challenges the admission of those screenshots. Regardless, the trial court's mischaracterization of the emails did not inform its decision since it found the best evidence rule did not apply to those emails.

[5] Here, Victim produced a printout of the emails, which would ordinarily be admissible as a counterpart under the best evidence rule. The problem in this case, however, is that she did not print the original emails. Nor did she save the original emails as PDFs or screenshots, and then forward those to herself. She instead forwarded the original emails to herself, and then printed the new originals. This intermediary step crafted new documents that "were not created in order to have the same intended effect as the original messages[.]"
*(Footnote Continued Next Page)*

While not photographic duplicates as in ***Talley***, the forwarded emails were created through an electronic process that reproduced the original electronic messages in their entirety, as well as the sender's and receiver's email addresses, the time and date the messages were sent, and the subject line of the email. ***See*** Pa.R.E. 1001(e) (defining a duplicate to include "a copy produced by a[n] . . . electronic . . . process or technique that accurately reproduces the original"); Exhibits C-5 to C-6 and C-8 to C-16. Indeed, the forwarded messages in this instance included more information than the screenshots in ***Talley***, where the sender's identity and date and time of sending was omitted. ***Cf. Talley***, 265 A.3d at 504, 534-37. While the exhibits admitted at trial contain additional information, namely Victim's subsequent forwarded messages, this does not alter the fact that the Appellant's messages to Victim and their relevant header information were reproduced in the forwarded emails that were printed and admitted at trial.

Majority at 10 (footnote omitted).

Upon review, I find screenshots and forwarding to be wholly different processes. As described hereinabove, the ***Talley*** Court considered the dangers of mis-transmission in its analysis but concluded that the process of creating a screenshot did not present that danger. However, forwarding invokes that precise danger. Email forwarding has been explained as "sending a received electronic message to another individual or a group of people. You can resend the email in its original form, or you can alter the content of the email before sending it to the recipient." *How to Forward an Email (With Steps, Tips, and Benefits)*, Indeed Editorial Team, 8/17/24, at indeed.com. Critically, I take judicial notice that any portion of a forwarded email may be

_____

***Talley***, 265 A.3d at 534. Therefore, like the screenshots in ***Talley***, I would conclude that the forwarded emails did not constitute counterparts.

changed, whether by omission or addition, and there is no way for the recipient or a third party to assess if that has occurred from a printout. In fact, an email can be crafted so as to fabricate a forwarded email. Therefore, if the process of taking a screenshot is akin to photographing something, forwarding an email is like a game of telephone, where the person creating the message is no longer available to compare the original message with the final result.[6]

The Majority rejects Appellant's complaint that the original messages were subject to manipulation by forwarding because "the potential for manipulation exists when any duplicate is created, and Appellant has not called into question the authenticity of any specific portion of the original messages, either in the trial court or this Court." Majority at 11 (citation omitted). One might wonder how a defendant is supposed to challenge the specific portion of a writing when he lacks access to the original. Certainly, technological advances have created the potential for manipulation of any duplicate, or even original for that matter. However, the process of forwarding an email is inherently fraught with the possibility of mis-transmission, unlike taking a screenshot or saving a document as a PDF, and then printing it. The latter preserves the original for future transmission, whereas the former leaves it open to unrestricted editing. Accordingly, I cannot consider the

_____

[6] The Majority opines that this danger also extends to email replies. *See* Majority at 12 n.8. Since that is not the situation presently before us, I offer no opinion in that regard.

forwarding of an email to be a process that is designed to create a true representation of the original and simultaneously inhibit fraud.

Moreover, I believe "the circumstances make it unfair to admit the" emails. Pa.R.E. 1003. As noted by the trial court, "the originals of these documents were in the exclusive control of [Victim] and not [Appellant]. And [the originals] are not coming into this courtroom for reasons I don't know and apparently are not available at this time to be used[.]" N.T. Trial, 2/1/23, at 9. The Commonwealth never offered an on-the-record reason for why the originals were not produced. Without the original, there was nothing for Appellant to compare to tell whether the emails were manipulated during the forwarding process or wholly fabricated. It would be fundamentally unfair to require Appellant, who is presumed innocent until proven guilty, to produce the original emails to show any alterations because he would then have to concede the substance of the writing and that he authored them.[7]

While I recognize that Victim forwarded the emails in an effort to print and preserve them, that was not the only method available to her. She took screenshots of text messages that she received on her phone. *See* N.T. Trial, 2/1/23, at 45-46. As described in *Talley*, these would be admissible as duplicates under the best evidence rule.

---

[7] My colleagues' dismissal of this concern assumes that a defendant has access to the original emails. However, if the emails were fabricated or authored by someone other than the defendant, it would be impossible to demonstrate their inauthenticity.

Victim testified that she received the original emails on her phone and used her phone to forward them to her work email or the investigating officer. *Id*. at 38, 41-42, 50-51, 68, 72, 76, 92, 94, 98, 102, 108). Thus, she could have taken screenshots of the original emails, as she did with the text messages. If Victim had created screenshots of the original emails, she would have been able to forward those as an attachment to her work email address or the police and then printed them out. In such a case, I would agree with the Majority that a printout of a screenshot of the original email would be admissible as a duplicate. Similarly, Victim had the option of showing the original emails to the investigating officer and then permitting the officer to create a duplicate.

However, that did not occur. Instead, the court was left with forwarded emails, which I would deem inadmissible as neither counterparts nor duplicates. *See* Pa.R.E. 1002, Cmt. (highlighting as one of the reasons for justifying the best evidence rule: "The rule inhibits fraud because it allows the parties to examine the original documents to detect alterations and erroneous testimony about the contents of the document" (cleaned up)).

Nonetheless, I deem the court's error to be harmless. *See Commonwealth v. Green*, 162 A.3d 509, 519 (Pa.Super. 2017) (observing that violations of the best evidence rule are subject to harmless error).

> Harmless error is "a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt." *Commonwealth v. Koch*, 39 A.3d 996, 1006 (Pa.Super. 2011). "An error will be deemed

harmless where the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict." ***Commonwealth v. Mitchell***, 839 A.2d 202, 214 (Pa. 2003).

The Commonwealth bears the burden to establish that the error was harmless. ***Id.*** at 280, 839 A.2d at 215. The Commonwealth satisfies the harmless error burden when the Commonwealth is able to show:

> (1) the error did not prejudice the defendant or the prejudice was *de minimis*; **or** (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; **or** (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Passmore***, 857 A.2d 697, 711 (Pa.Super. 2004) (internal citation omitted) (emphasis added).

*Id*. (citations altered). Here, Victim's testimony, as well as the cards, texts, social media posts, and YouTube videos overwhelmingly established that Appellant harassed Victim. The emails were cumulative of these similar communications and the prejudice resulting from their admission was "insignificant by comparison[.]" *Id*. (cleaned up). Therefore, I would still affirm Appellant's judgment of sentence.

Based on the foregoing, I respectfully submit this concurring opinion.